MOORE et al.

v.

CONNER et ux.

*(Supreme Court of Appeals of Virginia, April 10, 1890.)*

[20 S. E. Rep. 936.]

**Descent—Collaterals of the Half-Blood—When They Take Per Stirpes.**
Code 1887, § 2548, provides two courses of descent, the first commencing with intestate's children and their descendants and ending with his mother, brothers, and sisters, and their descendants; and the second beginning with the grandfather and ending with the husband or wife and his or her kindred. Clause 10 provides that, if there be no father, mother, brother, or sister, nor any descendant of either, nor any paternal kindred, the whole shall go to the maternal kindred, and, if there be no maternal kindred, it shall go to the paternal kindred; that, if neither maternal nor paternal kindred, it shall go to intestate's husband or wife; or, if he or she be dead, to his or her kindred, in the like course as if he or she had survived the intestate, and died entitled to the estate. Section 2549 provides that collaterals of the half-blood shall inherit only half so much as those of the whole blood: but, if all the collaterals be of the half-blood, the ascending kindred, if any, shall have double portions. Section 2550 provides that when intestate's children, mother, brothers, and sisters, or his grandmother, uncles, and aunts, or any of his female lineal ancestors living, with the children of his deceased lineal ancestors, male and female, in the same degree, come into the partition, they shall take per capita; and where, a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take per stirpes, but whenever those entitled to partition are all in the same degree they shall take per capita: *held*, that where an intestate left surviving no father and no children or descendants, but left a mother and four nieces and nephews of the half-blood, such nieces and nephews took per stirpes, and not per capita.

Appeal from circuit court, Appomattox county.

Action by Robert W. Conner and Lou R. Conner, his wife, against Joseph M. Moore and others, for partition. From a decree for plaintiffs, defendant Joseph M. Moore appeals. Affirmed.

*Edward S. Brown* and *Wm. B. Tinsley,* for appellants.

. *Chas. H. Sackett,* for appellees.

RICHARDSON, J., delivered the opinion of the court.

This is a controversy between certain of the heirs at law of William B. Moore, late of Appomattox county, in respect to the mode of partition of an undivided two-sevenths vested interest in remainder, of which he died seised, in a tract of 462 acres of land in which his mother had a life estate. Said William B. Moore had attained his majority, and he died intestate, but left a widow, who was not entitled to dower because her husband was not entitled to the possession of said interest during coverture. He left no children, nor descendants of any, nor did he leave a father. His heirs at law were his mother, Rebecca T. Moore, and four nieces and nephews of the half-blood. The facts are these : William Moore, the father of said William B. Moore, was twice married, and he had three children by each marriage. The children by the first marriage were Blake B. Moore, Amanda Phelps, and Mrs. Trent. The children by the last marriage were the said William B. Moore, Henrietta Moore, and Susan Bagby. Prior to his death, to wit, on the 20th day of March, 1868, William Moore, the father of said two sets of children, conveyed to Jesse T. Davidson, trustee, said 462 acres of land, it being his old homestead place, in said county of Appomattox, and certain articles of personal property, upon the following trusts, as stated in the language of the deed : "For the sole and separate use and benefit of Rebecca T. Moore during her natural life, free from the control, debts, liabilities, or marital rights of her husband ; that the said

trustee shall permit her to hold quiet and peaceable possession of the land and personal property aforesaid, taking to herself, free from any marital rights, the use and enjoyment, rents and profits, during her life, with power, however, to sell or to dispose of, by gift or otherwise, according to her will or pleasure, any or all of the personal property aforesaid, and at the death of the said Rebecca T. Moore the said trustee, Jesse T. Davidson, shall convey the said tract of land, and such portion of the personal property aforesaid as may remain undisposed of, if there be any, to the said Susan Bagby and Henrietta Moore ; to have and to hold the same in severalty, share and share alike, to them and their heirs, forever.'' The said Henrietta Moore and Susan Bagby both departed this life intestate and without issue, and the husband of the said Susan is also dead. William Moore, their father, Blake B. Moore, their half-brother, and Mrs. Trent, their half-sister, all died before either the said Henrietta or Susan. Blake B. Moore left two children, to wit, Joseph M. Moore and Martha R., wife of Fletcher B. Moore. Mrs. Trent left one child, Lou R. Conner. Subsequent to the death of both Henrietta and Susan, the said Amanda Phelps also died intestate, leaving only one child, George W. Phelps. On the —— day of ——, 1884, the said William B. Moore departed this life intestate, and without issue, leaving surviving him, however, a widow, the said Mary V. O. Moore. On the 17th day of September, 1887, the said Rebecca T. Moore, the life tenant, and mother of said William B., Henrietta, and Susan, also departed this life, having first made and published her last will and testament, which was proved and admitted to record at the October term, 1887, of the county court of said county of Appomattox. By the fifth clause of her will the testatrix devised all her interest in said tract of 462 acres of land to Charles H. Sackett, in trust for her niece Martha R. Moore during her natural life, and at her death to be equally divided among her children then living, and the descendants of any who may have died, said descendants tak-

ing their parents' shares. The said Martha R. Moore has six children, to wit, Neola E., wife of T. M. Howerton, Rebecca T. Moore, Jr., James W. Moore, Baker B. Moore, William W. Moore, and Minnie S. Moore, all of whom are under the age of 21 years. In August, 1888, Robert W. Conner and Lou R., his wife, filed their bill in the circuit court of Appomattox against James T. Davidson, trustee in said deed from William Moore to him, dated 20th of March, 1868 ; George A. J. Pinnell, executor of Rebecca T. Moore, deceased ; Joseph M. Moore ; Mary V. O. Moore, widow of William B. Moore, deceased ; Charles H. Sackett, trustee, under the will of Rebecca T. Moore, deceased, for Martha R. Moore and children ; Fletcher B. Moore and Martha R. Moore, his wife ; T. M. Howerton and Neola E., his wife ; Rebecca T. Moore ; James W. Moore ; Baker B. Moore ; William W. Moore ; and Minnie S. Moore ; the last six being the children of Martha R. Moore, all of whom are under 21 years of age. The object of the suit was to have partition among the heirs of Henrietta Moore, to have partition among the heirs of Susan Bagby, and to have partition among the heirs of William B. Moore.

After setting forth substantially the facts as above stated, the bill of the plaintiffs alleges that Henrietta Moore and Susan Bagby each acquired, by the said deed from William Moore to Jesse T. Davidson, trustee, dated March 20, 1868, a vested, fee-simple, undivided half interest in said 462-acre tract of land, subject to the life estate of the said Rebecca T. Moore in the whole tract, which interests, upon the death of each, descended to her heirs at law ; and that the said Henrietta Moore predeceased the said Susan Bagby. William B. Moore was the full brother and one of the heirs at law of both Henrietta Moore and Susan Bagby, and his two-sevenths interest in said tract of land—which is the sole subject of controversy here—was derived by inheritance from them. And in the like manner Mrs. Rebecca T. Moore, the mother of William B. Moore, derived from the said Henrietta, Susan, and William

B. Moore the interest devised by her in trust for Martha R. Moore for life, remainder in fee to her children. And the four nephews and nieces of the half-blood, who come into this petition, likewise derive their interests by inheritance from the said Henrietta, Susan, and William B. There is, however, no controversy except as to the interests of said half-bloods, inherited from William B. Moore. The plaintiffs, in their bill, claim that on the death of William B. Moore, intestate, his share in said tract of land (two-sevenths) passed to his mother and said four nephews and nieces, and that the same must be divided into five parts, giving to the mother two-fifths; to George W. Phelps, the only child of Amanda Phelps, a deceased half-sister of the intestate, one-fifth; to Joseph M. Moore and Martha R. Moore, the children of Blake B. Moore, a deceased half-brother of the intestate, one-fifth; and to the female plaintiff, Lou R. Connor, one-fifth. In other words, that the said nephews and nieces, being of the half-blood, take per stirpes, or by stocks, and not per capita. Joseph M. Moore, one of the children of Blake B. Moore, answered the bill, denying the manner of distribution therein insisted upon, and claiming that the nephews and nieces take per capita, and not per stirpes, and that, therefore, the two-sevenths interest of the intestate must be divided into six parts, giving to the mother two-sixths thereof, and to each of the four nephews and nieces one-sixth. At the hearing, in September, 1888, the circuit court rejected the claim thus set up in the answer of Joseph M. Moore, and, holding that the said nephews and nieces take per stirpes, and not per capita, decreed that the two-sevenths interest of the intestate, William B. Moore, be divided into five parts, and that Mrs. Rebecca T. Moore, his mother, take two-fifths, George W. Phelps one-fifth, the said two children of Blake B. Moore one-fifth, and the female plaintiff, Lou R. Conner, one-fifth; and from that decree Joseph M. Moore obtained an appeal.

We are of opinion that the decree appealed from is unques-

tionably right. Indeed, it is difficult to perceive how, in the light of the plain provisions of our statute of descents and distributions, any claim to the contrary could be seriously asserted. Yet such claim is here asserted, and it has been argued by counsel for the appellants with a degree of learning and ability worthy of a better cause. The statutory provisions which govern the case are found in sections 1–3, c. 119, Code 1873, and are the same as sections 2548–2550, Code 1887. The case is this: The intestate, William B. Moore, left no descendants, no father, no brother, nor sister, but he left a mother and four nephews and nieces,—a nephew, the son of a deceased half-sister; a niece, the daughter of another deceased half-sister; and a nephew and niece, the children of a deceased half-brother. It is conceded that, the nephews and nieces being collaterals of the half-blood, the mother takes a double portion; but it is contended that the nephews and nieces take per capita, which would result in dividing the estate for distribution into six parts, two of which would go to the mother, and one to each of the nephews and nieces. By section 2548, Code 1887, it is provided that, when any person having title to any real estate of inheritance shall die intestate as to such estate it shall descend and pass in parcenary to such of his kindred, male and female, as are not alien enemies, in the following course: First, to his children and their descendants; second, if there be no child, nor the descendant of any child, then to his father; third, if there be no father, then to his mother, brothers, and sisters, and their descendants. These three clauses of section 2548 provide for the most prominent and usual features in the course of descents. But it was present to the mind of the lawmakers that many cases would necessarily arise in which those standing in more remote degrees of kinship should be provided for. Hence, by the fourth clause of said section, it is provided that, if there be no mother, nor brother, nor sister, nor any descendant of either, then one moiety shall go to the paternal, the

other to the maternal, kindred, in the following course : First, to the grandfather ; if none, then to the grandmother, uncles, and aunts, on the same side, and their descendants ; if none such, then to the great-grandfathers, or great-grandfather, if there be but one ; if none, then to the great-grandmothers, or great-grandmother, if there be but one, and the brothers and sisters of the grandfathers and grandmothers and their descendants ; and so on in other cases without end, passing to the nearest lineal male ancestors, and, for want of them, to the nearest lineal female ancestors in the same degree, and the descendants of such male and female ancestors. Thus two general courses of descent are provided, the first commencing with the children of the intestate and their descendants, and ending with his mother, brothers, and sisters, and their descendants ; and the second beginning with the grandfather and ending with the husband or wife and his or her kindred ; it being provided by the tenth and last clause of said section 2548 that, if there be no father, mother, brother, or sister, nor any descendant of either, nor any paternal kindred, the whole shall go to the maternal kindred, and, if there be no maternal kindred, the whole shall go to the paternal kindred. If there be neither maternal nor paternal kindred, the whole shall go to the husband or wife of the intestate ; or, if the husband or wife be dead, to his or her kindred, in the like course as if such husband or wife had survived the intestate, and died entitled to the estate. Thus the law in general terms prescribes the course of descents, and designates the persons or classes who shall inherit. But it was foreseen that a class of persons entitled to the inheritance—such as mother, brothers, and sisters—would, in the nature of things, often be disturbed by the death of one or more members, and that, in cases like the present, collaterals of the half-blood would come into the partition, and that the descendants of the dead members of the class and the collaterals of the half-blood and their descendants should be provided for, and their rights defined. These

objects were effected by sections 2549, 2550. By the first of these sections, which is entitled "How collaterals of half-blood inherit," it is declared that "collaterals of the half-blood shall inherit only half so much as those of the whole blood; but if all the collaterals be of the half-blood, the ascending kindred, if any, shall have double portions." In the present case, the collaterals all being of the half-blood, the intestate's mother takes a double portion. About this, however, there is no controversy. By the second of the sections last above referred to (section 2550), and which is entitled "When parties take per stirpes, and when per capita," it is provided that: "When the children of the intestate or his mother, brothers and sisters or his grandmother, uncles and aunts, or any of his female lineal ancestors living, with the children of his deceased lineal ancestors, male and female in the same degree, come into the partition, they shall take per capita or by persons; and where a part of them being dead and a part living, the issue of those dead have right to partition, such issue shall take per stirpes or by stocks, that is to say, the shares of their deceased parents; but whenever those entitled to partition are all in the same degree of kindred to the intestate they shall take per capita or by persons."

In order to uphold his contention that these nephews and nieces of the half-blood take per capita, the appellant attempts to construct a class so composed as to effect his purpose; and to that end he wrests from their proper connections two clauses of the statute, and in doing so destroys the grammatical sense and the consistency of the provisions regulating the prescribed course of descents and distributions. First he takes from section 2549—it being the latter clause thereof—the provision: "But if all the collaterals be of the half-blood, then the ascending kindred, if any, shall have double portions"; and, second, he takes from section 2550 this language: . "When  *  *  * any of his female lineal ancestors living, with the children of his deceased lineal ancestors, male and female, in the same

degree, come into the partition," etc.   Now, let us look into these provisions, and see if the proposed use of them can serve the desired purpose.   It is certain that the last clause of section 2549 contributes nothing to that end.   The entire section relates only to collaterals of the half-blood.   Its caption is, "How collaterals of the half-blood inherit."   It states affirmatively, not what others shall inherit, but what collaterals of the half-blood shall inherit.   Its obvious meaning is that, if all who inherit are collaterals of the half-blood, some of them of the ascending kindred and some not, those of the ascending kindred shall have double portions.   The clause relied upon was not intended to alter in any way a previously established class. On the contrary, the disjunctive words "but if," introducing the last clause of the section, show that the class of persons referred to is the same mentioned in the first clause of said section.   Moreover, in the present case, all who inherit are not collaterals of the half-blood, for the mother is among those who inherit, and her presence in the inheriting class makes it a very different case.   It is therefore clear that the clause in question has no bearing whatever in aid of the appellant's contention.   To illustrate the meaning of the clause :   Suppose, under the sixth clause of section 2548, a living uncle of the half-blood came into the partition with a child of a deceased uncle of the half-blood, and the two inherit an estate from the child of a half-brother of these uncles ; the living uncle, being of the ascending kindred, would take a double portion.   Second.  As to the provision from section 2550, which is relied upon, it must be borne in mind that that section embraces four distinct classes, to wit :   (1) The children of the intestate ; (2) his mother, brothers, and sisters ; (3) his grandmother, uncles, and aunts ; (4) any of his female lineal ancestors living, etc., —to which, in case some of the class are dead, the subsequent provision for taking per stirpes or per capita applies ; and these four classes are distinctly in unison with and explanatory of the like number of classes mentioned in the "course of descents"

prescribed by section 2548 in which the question may arise, and are arranged in the same order.   Hence in the course of descents prescribed in section 2548 we have :   First, "to his children and their descendants;" second (clause 3), "to his mother, brothers, and sisters;" third (clause 6), grandmother, uncles, and aunts ; fourth, other cases, respecting the division of moieties under the subsequent clauses of the section.   In none of the intervening cases can the question of taking per stirpes arise.   The present case in each instance comes under the second head (clause 3), and we have no concern with the others.   In searching for the class entitled to partition in the present case, we must stop when the law stops, at "mother, brothers, and sisters."   So, also, in seeking the necessary explanation under section 2550, we must call a halt when we reach the corresponding class there given.   Section 2548 prescribes the "course of descents generally."   So in this, as in every, case arising under the statute, reference must first be had to that section to ascertain to which class it belongs.   The other divisions are but explanatory of how the estate shall be partitioned under the proper class when discovered, especially when some of those entitled to take are descendants of deceased members of the class, or some of the class are collaterals of the half-blood.   Having thus determined the class, no number of deaths in it, short of its total extinction, will affect the interest of any survivor of that class.   This, in the present case, is the pivotal point of inquiry, for an effort is made to establish a class out of subsequent explanatory provisions, and contrary to the previously established course of descents generally.

In the case at bar there can be no question but that the third clause of section 2548, cited above, is the one under which the distribution must be made; and, this being so, the manner of distribution is plainly directed by sections 2549 and 2550.   The last clause of section 2550 is in these words: "Whenever those entitled to partition are all in the same decree of kindred to the intestate, they shall take per capita, or by per-

sons." Now, if the heirs in this case consisted of the four nephews and nieces of the half-blood and a nephew of the whole blood,—say, for instance, a child of Susan Bagby,— and no others, then the estate would have to be divided into six parts, and the nephew of the whole blood would get a double portion, or two-sixths. All who inherit would then be in the same degree of kindred to the intestate. But, as it is, we have the living mother, which establishes the class for division much nearer to the intestate. Again, for illustration, let us suppose the descendants of the half-brothers and sisters numbered 48 instead of 4, then the application of the rule contended for by the appellant would reduce the mother's share to two-fiftieths. It is thus made clear that the statute cannot be so warped as to put the mother in a class in which she will have to share per capita with her grandchildren and step-grandchildren. Thus it is seen that the clauses relied on by the appellant are far from upholding his claim. Both of them relate to a more remote degree of kindred than we have to deal with in the present case. Counsel for the appellant with apparent earnestness rely upon Davis v. Rowe, 6 Rand. 355; Garland v. Harrison, 8 Leigh, 368; and Ball v. Ball, 27 Grat. 325; but they afford no support to the claim asserted. In fact, one of them—Garland v. Harrison—is very much like the case in hand. That was a case in which a bastard son died without issue, leaving his mother and two bastard brothers by other fathers as his heirs, and it was held that the two bastard brothers, being regarded as of the half-blood only, could take only half so much as the mother. It is clear that neither of the cases referred to in any way affects the case in hand. For the reasons above stated, we are clearly of opinion that the decree appealed from is without error, and the same must be affirmed.