## CIRCUIT COURT OF CAROLINE COUNTY

Anthony G. Esper et al.

v.

Daisy White Gray et al.

March 19, 1990

Case No. 83-C-75

By JUDGE WILLIAM H. LEDBETTER, JR.

The central issue in this partition suit is the construction of Virginia Code § 64.1-2.

This partition suit has been on the chancery docket since 1983. By order of October 12, 1983, the matter was referred to a commissioner in chancery. After taking evidence, the commissioner filed his report on May 26, 1989. (At least part of this delay apparently was occasioned by the difficulty in ascertaining the identity and marital status of heirs and potential heirs.)

On June 28, 1989, the commissioner's report was confirmed and a special commissioner was appointed to sell the property. The court approved, and later confirmed, a sale of the property for the sum of $56,000.00 cash. The money was deposited with the general receiver.

Shortly before a scheme of distribution was presented, counsel discovered that the commissioner's proposed distribution was in error because some of the distributees claimed through collaterals of the half blood. This important fact was unknown to counsel and the commissioner until sometime in June or July of 1989. Thereafter, counsel for the complainant presented evidence *ore tenus* to estab-

lish that fact, and the court entered an order correcting the oversight on August 30, 1989.

Counsel for the complainant then prepared a new scheme of distribution. Other parties to the suit objected, questioning the complainants' interpretation and application of § 64.1-2. Obviously, an appropriate distribution of the proceeds of sale depends upon a correct reading and application of that statute.

### Calculations Under Section 64.1-2

In this case, the distributees, all of whom have now been identified, claim through three siblings, one of whom is a collateral of the whole blood and two of whom are collaterals of the half blood.

Virginia Code § 64.1-2 provides that collaterals of the half blood shall inherit only half as much as those of the whole blood.

The complainant reads the statute to mean that in this case the whole-blood collateral should take two-thirds and the half-blood collaterals *combined* take one-third, *i.e.*, one-sixth each. The complainant points to the fact that the word "collaterals" in the statute is plural. This analysis is incorrect.

Whether the words in the statute are plural or singular is of no significance. (In fact, the word "collaterals," which refers to half-bloods, is balanced by the plural pronoun "those" referring to whole-bloods.)

The purpose of the legislation is to modify the common law, which completely excluded collaterals of the half blood from inheritance. It has been observed that the statute is sensible and just for the reason that half-bloods should take only half as large a share since they have only half as much of the common blood. *See* 6A M.J., *Descent and Distribution* § 24.

The proper method of calculating shares under the statute is to double the share of the whole-blood collateral(s). Therefore, if there are three collaterals, one of the whole blood and two of the half blood, there are three shares. Doubling the whole-blood collateral's share, there are four shares. The whole-blood collateral takes two of the four shares (one-half) and each of the half-blood collaterals takes one of the four shares (one-fourth).

This method of calculation is identical to the methodology explained in *Moore v. Conner*, 2 Va. Dec. 56 (1890).

The proposed schemes of distribution and sketch order presented to the court on March 14, 1990, are returned herewith, and counsel is directed to recalculate the shares, and to prepare and circulate an order and scheme of distribution consistent with this opinion.

### Commissioner's Fee

The special commissioner has requested approval of a fee equal to ten percent of the sale proceeds. One of the distributees objects.

Virginia Code § 8.01-109 provides that special commissioners appointed by the court to sell property or receive funds shall be entitled to a fee of five percent of the first $50,000.00 and two percent of any amount above that. The special commissioner points to § 14.1-133.1 which, in essence, allows the court to set the fee of a commissioner "for his services performed" for certain reports made to the court.

There is no doubt that Mr. Ivey P. Blue, counsel for the complainants and special commissioner, performed many services in connection with this suit other than merely selling the property and supervising the receipt and disbursement of the proceeds through the general receiver. The litigation has been lengthy and complicated. As noted above, the identity, marital status, and other data concerning some of the branches of the family tree took considerable time to ascertain. At a point when everyone thought that the suit was drawing to an end, the question of half-blood collaterals reared its head, causing a substantial amount of additional work. Also, along the way, Mr. Blue was called upon to defend or stave off claims asserted by Caroline County for unpaid property taxes.

The fact remains, however, that Mr. Blue was appointed by the court on June 28, 1989, as special commissioner *to sell the property*. Fees for this sort of court-appointed officer are clearly governed by § 8.01-109. All other services performed by Mr. Blue -- and, without doubt, they were substantial -- were performed as counsel for the complainants, not pursuant to appointment of the court.

In performing those services, he created a fund that benefits persons other than the complainants. Under well-recognized principles, he is entitled to a reasonable attorney's fee payable from the shares of all unrepresented parties and his clients in this case.

Therefore, Mr. Blue is entitled to a special commissioner's fee in an amount established by using the provisions of § 8.01-109, that is, $2,632.00. In addition, the court approves an attorney's fee to Mr. Blue in the amount of $3,028.00, payable from all unrepresented shares and the share of his clients, proratably.