# Wheeling,

WILLIAM DOUGLAS, *et. ux. vs.* MOSES S. FEAY, *et. ux.*

January Term, 1864.

1. A testamentary provision in favor of a widow is not to be construed as in lieu of dower, unless it is declared so to be in express terms; or, unless, the intention of the testator to make the provision in lieu of dower, can be as satisfactorily ascertained as though it were expressed; or, the intention is so clearly manifest, that the claim of dower would be inconsistent with the will, and would defeat and disturb its provisions.

2. A case in which the provisions of a will are held not to be in lieu of dower.

3. The renunciation of a will, by the widow, is equally as void when made in person, in open court, and *no record* made thereof, as if made *in pais*, or by writing not recorded, or before any other court than that in which the *will* is recorded.

*Hugh Stewart* of *Marshall* county executed his last will and testament on the 8th day of February, 1853, in which he devised to his daughter *Mary Ann* and her husband *William Douglas*, a certain tract of land in *Marshall* county containing ninety-nine acres and sixty-three poles, and in consideration of its being more valuable than any other share of his estate, subject among others, to the following charge, *i. e.*: "I devise that my wife *Sarah Stewart* live with my said daughter *Mary Ann Douglas* and *William Douglas* her husband, eating as they eat, sleeping as they sleep, and wearing apparel as good as they wear every day."

The will contained a further devise to his daughter *Jane Feay* and *Moses Feay* her husband, of a certain other tract or parcel of land known as the "upper hundred acres."

The testator died in March, 1853, and his will was shortly afterwards admitted to probate in the county court of *Marshall* county. At the March term 1853 of the said court,

commissioners were appointed on motion of *William Douglas*, one of the devisees under the will, to assign to the widow, dower in the testator's real estate. The commissioners discharged their duties and reported to the April term 1853 of the said court, that they had assigned and set apart by metes and bounds, to the widow, her portion of the real estate; and the said portion was established as the dower of the widow *Sarah Stewart*. In February, 1856, *Feay* and his wife filed a bill in equity before the judge of the circuit court of *Marshall* county, alleging the facts as set forth above, and charging that the widow had, shortly after the will was admitted to probate, renounced the provisions made for her in the same, and insisted on her taking her dower and other rights as a widow, in the estate of the testator, and that by reason of dower having been assigned her on the real estate devised to the complainants, they had lost for the life time of the widow, one third of the land so devised, and that the land devised to *Douglas* and wife, charged with the maintenance of the widow, was bound and liable to make good to the complainants, all they had lost by reason of the widow renouncing the provisions of the will, and having dower assigned her out of the one hundred acres devised to them; and claiming also that the land devised to *Douglas* and wife, should be chargable with a sum equivalent to the boarding and lodging of the widow. To which bill the defendant *Douglas* answered, that the land devised to him was not liable to any of the provisions of said will, but, that the widow was merely directed to board and lodge with himself and wife, that they had always been willing for her to do so, but she had failed and refused to do so.

Subsequently the complainants obtained leave to file an amended bill, which was done at the April rules, 1857, wherein they alleged that although the widow did, shortly after the will was admitted to probate, renounce its provisions, yet from mistake, neglect or loss, the same did not appear of record; and prayed that the relief might be granted them as prayed for in the original bill, or that the widow might be wholly barred of dower in *their* land. The

defendant *Douglas* answered, that he admitted the renunciation of the will by the widow, and charged that she was entitled to her dower, as well as the provisions made in her favor in the will.

At the May term 1859 of the court, an interlocutory decree was had in the cause; the court decreed that the eating, sleeping and clothing of the widow were a charge on the real estate devised to *Douglas* and wife, and that by her renunciation of the will, the widow became entitled to charge the realty devised to *Feay* and wife, with a portion of her dower; and referred the cause to a master to ascertain and report, — "1st. What was the cash value of the means of eating, sleeping and clothing of the said *Sarah Stewart*, as good as the said defendants *Mary Ann* and *William Douglas* ordinarily use and possess, every day, by the year, and secondly, what is the cash value per annum, of so much of the dower estate of the said *Sarah*, as has been assigned to her and taken from the real estate devised to the complainants; third, what is the cash value per annum of so much of the dower estate assigned to the said *Sarah*, as has been taken from the real estate devised to the defendants, *Mary Ann* and *William*." Under this reference the master reported: That, the value of the means of eating, sleeping and clothing of the widow *Sarah Stewart* to be, from March, 1853, to March, 1860, at the rate of 102 dollars per year—seven hundred and fourteen dollars; and the value of the dower assigned out of the land devised to *Douglas and wife* to be $30 per annum, for the same period, making in the aggregate $210; and the value of the dower assigned out of the lands devised to *Feay and wife*, to be $30 per annum, also making in the aggregate $210. At the October term, 1860, a final decree was rendered by the chanceller, he holding that the provision of the will relating to the eating, sleeping and clothing of the widow was in lieu of dower, and was a charge on the lands of the devisees *Douglas and wife*, from which the lands devised to *Feay* and wife were exonerated; and the chanceller therefore decreed, that the defendant *Douglas* pay to the complainants $210,

being the rental value of the dower assigned out of the lands devised to *Feay and wife* for the period set forth in the report of the master, and being less than what was sufficient for the annual support of the widow *Sarah Stewart.*

It was in evidence that the widow went into the county court of *Marshall* county, and made formal renunciation of the will in open court, but no *record* of that fact was ever known to have existed. The personal estate was so inconsiderable as not to enter into the controversy. It was also in evidence that the widow never availed herself of her dower.

In November, 1860, an appeal was prayed for by *Douglas and wife*, from the district court of the fifth district of Virginia, and the following errors were assigned:

1st. The provision of the will was not intended to be in lieu of the widow's dower.

2d. There is no proper and legal evidence to prove that the widow ever renounced the provision made in the will for her, consequently there is nothing to prevent her from claiming the provision made for her by the will, even if it was intended to be in lieu of her dower.

3d. Even if the widow did so renounce, the plaintiffs sustained no loss in the distributable portion of the personal estate, there being none for distribution.

4th. Though it should be admitted that the renunciation was a good and valid one and was properly proved in the cause, the plaintiffs have sustained no loss in consequence thereof, the widow never having availed herself of her right of dower.

5th. So long as the petitioners were ready and willing and even anxious to comply with the requisitions of the will, in providing suitable boarding, lodging and clothing for the widow, and made no default therein, neither *she* nor any one else, not even a court of equity, can hold them responsible in damages for the annual value thereof.

An appeal was allowed by the district court; and after pending sometime in that court, the cause was brought to

this court by virtue of the constitutional provision removing causes pending in the district courts, to this court.

*R. McConnel*, for appellants.

*Z. Jacob*, for appellees.

BERKSHIRE, President, delivered the opinion of the court.

The controversy in this case, arises under the will of the late *Hugh Stewart*, of *Marshall* county, and involves the proper construction of the same.

This will bears date on the 8th of February, 1853, and, it appears from the bill that the testator died about the month of March following. It also appears that the will was duly admitted to probate in the county court of *Marshall* county, at its March term, 1853, shortly after the death of the testator. That at the same term of the court, on the motion of *William Douglas*, one of the appellants, commissioners were appointed to assign the widow's dower in the real estate of the said *Hugh Stewart*, and that three commissioners reported at the following April term of said court, that they had assigned dower accordingly, in the tracts devised respectively to the appellants and appellees; which report was confirmed by the court without any exceptions taken thereto. It also further appears from the amended bill, and the answer thereto, and the depositions of witnesses taken in the cause, that the widow also appeared before the same court at the March term, 1853, and declared in open court that she *renounced* the provisions of said will, and that no *entry* or *record* of her renunciation was ever made in said court. But whether the widow took and held possession of the land so assigned for her dower, does not distinctly appear.

By this will the testator disposed of the whole of his real estate, which consisted of a house and lot in *Triadelphia*, in *Ohio* county, and about two hundred acres of land in *Marshall* county. The house and lot was devised to his daughter *Eliza Donally;* one hundred of the two hundred acre tract to the appellees, and the residue, being 99 acres and 63 poles, to the appellants; the latter however subject to cer-

tain legacies and charges laid upon it, as alleged by the testator because it was more valuable than any other shares of his estate. One of the charges on the part so devised to the appellants, is a provision for the support of the widow, out of which this litigation has arisen, and will be more particularly adverted to hereafter.

In February, 1856, being about three years after the assignment of dower to the widow, the appellees, *Feay* and wife, instituted their suit in equity in the circuit court of *Marshall* county against the appellants, *Douglas* and wife and others, alleging in their bill, among other things, that the widow had renounced her husband's will in the county court of *Marshall* county, and had her dower assigned in the land so devised to them, whereby they had *lost* the one third of the same for and during the life of the widow; and they claim and insist that the part so devised to said *Douglas* and wife, and charged with maintenance and support of the widow, and which was as thus claimed released from this charge and burthen by the renunciation aforesaid, is liable and bound in equity to indemnify and make good to them the loss sustained by reason of the assignment of the widow's dower in the part devised to them.

The appellant *William Douglas* answered the bill, controverting their right to recover from him, and insisting that the appellants were then, and always had been, ready and willing and even desirous, that the widow should live with them, according to the provisions of the will.

Subsequently an amended bill was filed by the appellees, alleging that when the original bill was filed, they supposed the renunciation of the will by the widow, was duly entered and recorded in the said court, but had since discovered that, owing to the alleged omission or mistake of the clerk, no record in fact was made.

To this amended bill, the said *Douglas* also filed his answer admitting that the widow had renounced before the court as stated in the amended bill, and that her dower was assigned on his motion, but also insisting that the widow was entitled to dower whether she had renounced the will

or not, and that she was entitled to *both dower and* the provisions of the will.

The cause was referred to a master to ascertain the value of the dower interest in the land devised to the appellees and appellants respectively, and also the value of the means of supporting the widow as provided in the will; who reported the value of her dower in each of said tracts, from the time of the assignment up to the date of the report, to be $210; and the cost or value of the maintenance and support of the widow according to the provisions of the will, for a like period, to be worth $714: leaving an excess over and above the value of the dower in both tracts of $294; which the plaintiffs below, claimed should be applied to the discharge of the $210, loss sustained by them by the assignment of dower to the widow. The cause, therefore, coming on to be heard, the chancellor holding that the provision in the will for the widow was in lieu of dower, and so intended to be, and that the renunciation of the will was valid and binding, decreed accordingly that the appellants should pay to the appellees the said sum of $210, so found by the master: and leave was also reserved to the appellees to come in on the footing of the decree and move for a further decree against the appellants. From this decree the appellants obtained an appeal to the district court of Virginia, then holden at *Fairmont*, and by the provisions of the law the case is brought into this court.

Two points are distinctly made, and fairly arise on the record, which under the mandate of the constitution we are required to decide. First, was the provision in this will for the widow intended to be in lieu of dower? Second, does it appear from the record that the widow has made a valid and binding renunciation of the will in the manner prescribed by law?

Jointure was not known at the common law, and of course can only result by virtue of the statutory law. I deem it unnecessary to examine the various provisions of the statutes of Virginia previous to the date of the will, as the law which rules the present case is the fourth section of

chapter 110 of the Code of Virginia, (1860), page 532. It provides that "if any estate, real or personal, *intended* to be in lieu of her dower, shall be conveyed or devised for the *jointure* of the wife, such conveyance or devise shall bar her dower of the real estate or the residue thereof." From the language here used, it will be seen that it is not *every* provision for the wife that will defeat her dower, or put her upon her election; but to have this effect it must appear that the provision was *intended* by the testator to be in *lieu* of and in *exclusion* of the dower.

How then is the intention of the testator to be manifested and ascertained? In the investigation of this question, it will be found a much easier task to ascertain the general rule of construction as settled by authorities, than to *apply* the rule to the various cases, and determine when a particular case is within or excluded from the rule.

In *Higginbotham* vs. *Cornwell*, 8 Grattan 83, it was held, that for a provision for a wife in the will of her husband to be held in lieu of her dower, it must be expressed in terms, in the will, or the conclusion from the provisions thereof, ought to be as clear and satisfactory as if it were expressed. And Judge Baldwin, in delivering the opinion of the court in this case, after shewing that the dower provided by law for the widow, is a *legal* right and paramount to the will of the husband, and that a devise in her favor may be conditional, and in lieu of her dower either by express terms or clear and necessary implication of the testator's intent to that effect, says: "But as the exercise of a testator's testamentary bounty in behalf of his wife beyond or irrespective of the provisions made for her by law, is natural and frequent, it is not allowable to infer an intent on his part to the contrary from other parts of the will by conjecture or probability: the conclusion ought to be as satisfactory as if it were expressed." And again, that, "a mere disappointment of the expectations of others under the will does not put the widow to her election."

And in illustration of the rule, he puts the case of a devise by the testator of a moiety of his real estate to the

widow, and the remaining moiety to his children, and says that in such a case the widow is not put to her election, but may take the moiety under the will, and one third of the other moiety for life, under the law; though (he adds) it might have been the design of the testator that she should have only a moiety, there being no plain and necessary implication that the children were not to take under the will subject to her right of dower.

I have been unable to find any authorities going to modify or relax the rule established in the case above cited, in any degree whatever, but on the contrary it is uniformly sustained and confirmed.

Chancellor *Kent*, in his commentaries, states the rule thus: "a testamentary provision in lieu of dower in order to render it such even *with the acceptance* of it, must be declared in express terms to be given in lieu of dower; or that intention must be drawn by clear and manifest implication from the will, founded on the fact that the claim of dower would be inconsistent with the will, or so repugnant to its dispositions, as to disturb and defeat them."

And the same rule is laid down by Judge Lomax after reviewing all the authorities: 1 Lomax Digest 152 to 158.

The case of *Craig's heirs* vs. *Walthall and wife* 14 Grattan, 578, cited and relied on by the counsel for the appellees, we are not to suppose, was intended to be in conflict with the case of *Higginbotham* vs. *Cornwell*, and the doctrine therein declared, but in the opinion of the court it fell within the rule as settled in the latter case.

In expounding the will under consideration we are bound to apply the foregoing rule of construction. The only provision for the wife in the will, is found in the 2d clause of the 2nd section, and is as follows: " 2nd, I devise that my wife *Sarah Stewart* live with my daughter *Mary Ann Douglas* and *William Douglas* her husband, eating as they eat, sleeping as they sleep and wearing apparel as good as they wear any day." Does this provision constitute a jointure for the wife, and *intended* by the testator to be in lieu of her dower? If so intended it must be *inferred* from the provisions of the will,

as it is no where *expressed*, and no extrinsic facts or proof have been produced in support of the *averments* on the part of the appellees that it was so intended.

It not being *expressed* to be in lieu of dower, can such intent of the testator be *inferred* from the will itself, according to the rules of construction to be applied, by implication, as clear and indubitable as if it were expressed? I am unable to discover any such intent, and am of opinion that it cannot be so inferred, and that the provision for the wife is not incompatible with her right of dower, nor is such right of dower inconsistent with the manifested intent of the testator. This provision, it is true, is a charge on the land devised to *Douglas* and wife, and provides for the support—and probably a very *meagre* one—of the widow, then as it appears quite aged, including only common or everyday fare and clothing. But in a similar case, where the testator devised an annuity or rent-charge out of the dowable lands, to the widow, and expressly devised the same lands to another, *subject to the charge* in favor of the widow, it was held that the widow would not be put to her election; but was entitled to the dower in the land, as well as the annuity or rent charged upon it. See 1 Lomax 157, and authorities there cited.

It was insisted by the appellees, in aid of their averments, that the charge on the land devised to the appellants, was intended by the testator to be in lieu of dower; that the appellants portion of the land was of much greater *value* than the appellees. I do not think, however, that this can help them. The object of the testator as explained by himself, in the will, was to equalize the devisees of his real estate; and it is plain that this equality would not be defeated by the widow's right of dower in the *whole* of the real estate. And the provision for the widow, was of a *contingent* nature and might terminate in a day or continue for years.

The widow being thus entitled to her dower, as well as the provision made for her in the will, the question of her *election* or *waiver* becomes wholly immaterial; but we are

still required to consider the remaining question arising on the record, namely: Does the record show a valid and binding renunciation of the will, by the widow, in the manner and form required by law? I am of the opinion that it does not. The usual mode of proving the record of a court is by exemplification or production of the record itself; or in the case of the loss or destruction thereof, then I presume parol evidence of the contents of such record would be admissible. But I am aware of no mode of proving or supplying a record, that never did in fact exist, as is,the case here; nor can I conceive that parol proof of what purports to be judicial acts and proceedings of a court of record, could be admissible in any case or for any purpose whatever, where no such record of what is proposed to be found was in fact ever made.

The 5th section of chapter 161 of the Code of 1860, page 685, provides that the proceedings of every court shall be entered in a *book*, read in open court by the clerk, and after being corrected, when it may be necessary, the record shall be signed by the presiding judge or justice. It is therefore very manifest that unless and until the proceedings of a court are recorded and signed as required by the statute, they can have no force or efficacy whatever.

The mode and manner of the renunciation of the will by the wife, is prescribed in the 12 section of chapter 123 of the Code of 1860, page 580. Such renunciation, it will be seen, is required to be made either in *person* before the court in which the will is recorded, *or* by a writing *recorded* in such court, or the clerk's office thereof, upon such acknowledgment or proofs as would authorize a deed or writing to be admitted to record. But in whichever mode the renunciation is made, it is very clear I think, that to give it any validity and effect it is indispensable that it should be *recorded.* It is conceded and settled by authority, that a renunciation by parol *in pais*, as well as a renunciation by and in writing not recorded, or before any other court than that in which the *will* is recorded, is absolutely void, (see 8 Leigh, 410), and it is difficult to perceive wherein a renun-

ciation *before a court* where no record of it is made, would differ from a similar renunciation by parol made *out of court*. For in either case the proof of the renunciation must rest in *parol*, and could be as readily and satisfactorily made in the one case as in the other, and it seems to me, therefore, ought to have the same effect and the same consequences result in *both* cases.

I cannot think, therefore, that one act of so much importance as the legal and valid renunciation of a will by the widow, affecting as it does the rights of others, and divesting and transferring even the *legal title* to land, was ever intended to be made to depend on the uncertain and sometimes conflicting recollections of witnesses, in controversies often arising remote from the time of such renunciation, as would be the case if the rununciation claimed in this case could be sustained.

For the reasons assigned, I am of opinion to reverse the decree, and remand the cause to the circuit court of *Marshall* county for further proceedings to be had therein, in accordance with the principles herein stated.

DECREE REVERSED.