WILLIAM SUTTON et al.

v.

HENRY B. READ, Admr.

*Opinion filed October 24, 1898.*

1. APPEALS AND ERRORS—*proceeding to sell real estate to pay debts involves a freehold.* A proceeding in the county court to sell real estate to pay debts involves a freehold, and an appeal therein lies directly to the Supreme Court. (*Lynn* v. *Lynn*, 160 Ill. 307, followed.)

2. REAL PROPERTY—*section 12 of Statute of Descent applies where testator fails to dispose of fee.* Where a testator devises a life estate in his land but fails to dispose of the fee, section 12 of the Statute of Descent applies, and the fee is distributed as intestate property.

3. SAME—*section 1 of the Statute of Descent applied.* Where a testator devises a life estate in all his property to his wife, and dies

leaving heirs but no child or descendant of a child, and without having made any provision for the vesting of the fee. in his real estate, the widow, under clause 3 of section 1 of the Statute of Descent, becomes seized in fee of one-half thereof.

4. SAME—*sections 10 and 12 of Dower act do not apply in case of intestacy.* The failure of a widow to elect under sections 10 or 12 of the Dower act does not affect her right to the share which, under the Statute of Descent, she is entitled to take in real estate of her husband as to the fee of which he has died intestate.

5. PARTITION—*practice of partitioning land before estate is settled is not approved.* The practice of taking decrees of partition and of holding sales in partition suits before it can be known whether or not it may be necessary to sell the land to pay debts is not to be approved, and purchasers at such sales must take notice of the rights of creditors of the deceased owner.

6. RES JUDICATA—*when partition decree does not bar claim against estate.* One having a claim against an estate of which the real estate is in process of partition is not barred by a decree in the partition suit from afterwards asserting her claim against the real estate sold under such decree, although she was a party to the partition suit merely as a tenant in possession, no question relating to her claim or to the administration of the estate being in issue.

7. ESTOPPEL—*when failure to present claim within two years does not work estoppel.* Failure of administratrix to present a claim against land within two years from the issuing of letters testamentary does not work estoppel, where the land was not discovered to be the property of the intestate within that time and there is no willful neglect or fraudulent purpose on her part.

APPEAL from the County Court of Bureau county; the Hon. RICHARD M. SKINNER, Judge, presiding.

This was a petition to sell real estate to pay debts, filed in the county court of Bureau county by Henry B. Read, as administrator with the will annexed of Olivia Read, deceased.

The facts appear to be as follows: Charles G. Read died testate about July 1, 1887, leaving Olivia Read, his widow, but no descendants, nor father or mother, surviving him, but leaving brothers and sisters, nephews and nieces, as his heirs. In his will, which was duly probated, he gave to his wife, Olivia, for her life, all of his property, both real and personal, of which he died seized, to be accepted by her in lieu of dower, and appointed her

sole executrix. He also made numerous bequests of money, amounting in all to $13,000, to various persons, some of them relatives and some of them strangers, among them one to Mary Wentworth of $5000 and one of $3000 to Henry B. Read, neither of whom was a relative, but who had been taken when quite young and brought up as members of his family. The only provision of his will affecting his real estate was as follows:

"*First*—I give and bequeath to my wife, Olivia Read, all of my property, both real and personal, of which I may die seized, to be accepted by her in lieu of dower during her natural life."

He died seized in fee of the three tracts of land involved in this suit. His widow, Olivia Read, remained in possession of the premises until her death, June 15, 1893. She also left a will, which was as follows:

"I, Olivia Read, being of sane mind and in the possession of all my faculties, make and execute this instrument as my last will and testament.

"*First*—I give and bequeath to Mrs. Mary Wentworth all of my household and personal property, of whatsoever kind is or may be in the house where I now reside.

"*Second*—It is my will and purpose to give full force and validity to one certain certified promise given to Mrs. Mary Wentworth, of which the following is a true copy, viz.: 'This is to certify that I promise to pay Mrs. Mary Wentworth three (3) dollars per week for services rendered from September, 1885, as long as her services shall be given, in addition to what is given her in the last will of Charles G. Read.—Olivia Read, Administrator of said will.'

"*Third*—It is my will that in the event that the last will and testament of Charles G. Read shall at any time be by proper authority declared null and void, then whatever portion of said estate would belong to me shall be divided so that Mrs. Mary Wentworth shall have and receive the two-thirds (⅔) thereof and Henry B. Read shall have and receive the one-third (⅓) thereof.

"*Fourth*—James P. Wentworth and Mary Wentworth are hereby appointed and made my administrators and executors to carry out the provisions of this my last will and testament.

"In witness whereof," etc.

Her will was probated and letters issued to the executors named therein September 6, 1893. Olivia Read left her surviving no husband or descendants, and her heirs-at-law were her nephews and nieces. Some of the heirs of Charles G. Read, on June 30, 1894, filed their bill for a partition of his said lands, but did not make any of the heirs of Olivia Read, or her devisees except Mary Wentworth, parties to the suit. The said Mary Wentworth was made a party, not because she was such devisee, but because it was alleged that she was in possession of one of said pieces of real estate, viz., a house and lot, and an accounting for rents was asked of her for the same. Henry B. Read intervened in the partition suit, and he and Mary Wentworth filed their pleas to the bill, setting up the legacies bequeathed to them, respectively, and alleging that they were charges upon said real estate. The circuit court overruled these pleas, and they appealed to the Appellate Court and then to this court, with the result that the decree finding that the legacies were not by the will made a charge on the land was affirmed, (*Wentworth* v. *Read*, 166 Ill. 139,) and that was the only question passed upon on that appeal. The appellants therein claimed no interest except that their legacies were a charge upon the land. It was held otherwise, and that, having no such lien, they would not be heard to complain that other proper parties were not joined. Afterwards, upon report by the commissioners in partition that the premises were not susceptible of division, an order of sale was entered and the property was sold by the master, and he conveyed the same to appellants, who were the purchasers. Notice on behalf of Mary Wentworth was given at the master's sale of the adverse interests now contended for by her. After the sale, on February 7, 1898, James P. and Mary Wentworth, the executors of the will of Olivia Read, resigned their trust, and Henry B. Read was appointed administrator with the will annexed.

On June 12, 1897, Mary Wentworth filed her claim against the estate of Olivia Read for services rendered her in her lifetime, and it was allowed by the county court February 7, 1898, in the sum of $1209, as of the seventh class, to be paid in due course of administration out of assets to be inventoried or accounted for after the expiration of two years from the granting of letters testamentary. No inventory of said estate was filed until January 4, 1898. The administrator afterward filed this petition to sell the real estate of the deceased to pay debts, showing that he had filed his just and true account, that said claim of $1209 was the only claim against the estate, and that there were no assets or personal property, and that Olivia Read died seized in fee, by inheritance from her husband, of the undivided half of three certain tracts of land, and which was the undivided half of the same lands sold at the master's sale. The petition also alleged that appellants claimed to have some interest in the premises, but that such interest was subject to the rights of the heirs, devisees and creditors of Olivia Read, deceased, and the prayer was that the court would settle the conflicting rights and interests and order petitioner to sell the land, or sufficient thereof to pay the debts of the deceased.

Mary Wentworth answered the petition, claiming that by virtue of the will of Olivia Read she was entitled to two-thirds of the estate of Olivia Read and Henry B. Read to one-third, and praying the court, on final distribution of said estate, to allot and divide it accordingly.

Appellants answered the petition, denying that Olivia Read died seized in fee by inheritance from her husband, as alleged in the petition, and alleging that she did not renounce the provisions made for her in her husband's will, but had accepted the same under the terms of the will and held possession of all of the real estate during her natural life and enjoyed the profits thereof, and thereby never became entitled to any portion of the same

in fee. They also set up the partition proceedings, and alleged that Mary Wentworth and Henry B. Read were parties thereto, and that it was their duty to have there set up their interest in the lands in that proceeding, and that having failed to set up any claim, right or interest therein, except the alleged lien of said legacies, which had been finally settled adversely to them, they were now estopped from claiming any such interest; that appellants bought the whole title to these lands at the partition sale, and that the claim of Mary Wentworth not having been filed or allowed until after two years after the issuance of the letters testamentary, it could not be collected out of any real estate, if any there was, of which Olivia Read died seized. The other defendants, being the heirs of Olivia Read, defaulted.

The court found and decreed that Olivia Read died seized in fee of the undivided half of the lands, as alleged in the petition, and ordered the sale of the same, or so much thereof as might be necessary to pay the debts, etc. From this decree appellants have appealed to this court.

MILO KENDALL, GEORGE M. STIPP, and CAIRO A. TRIMBLE, for appellants:

The widow is only an heir in wholly intestate estates. *Sturgis* v. *Ewing,* 18 Ill. 176.

The widow cannot take under the provisions of a will and also her legal share in the estate. She must take entirely under the will or must elect to take under the law. She cannot have both. *Brown* v. *Pitney,* 39 Ill. 468.

The widow must accept the will in its entirety, if at all. *Brown* v. *Pitney,* 39 Ill. 468; *Lessley* v. *Lessley,* 44 id. 527; *Woolley* v. *Schrader,* 116 id. 29; *Stunz* v. *Stunz,* 131 id. 210.

In order to take one-half the real estate the widow must renounce the will whereby she takes dower, and then she must elect to take the one-half in lieu of dower. *Wilbanks* v. *Wilbanks,* 18 Ill. 17; *Sturgis* v. *Ewing,* id. 176; *Brown* v. *Pitney,* 39 id. 468; *Lessley* v. *Lessley,* 44 id. 527.

The widow cannot, by renunciation of the will, take as in cases of intestacy. *Skinner* v. *Newberry*, 51 Ill. 203.

Sections 10 and 12 of chapter 41 of the Revised Statutes are to be construed together. Section 10 gives the widow dower in the real estate and one-third of the personal property, after the payment of debts, and section 12, as now amended, gives her one-half the realty in lieu of dower and one-half the personal property after the payment of just debts and claims.

The widow has the right of election between the two different estates. She cannot take both. *White* v. *Dance*, 53 Ill. 413; *Gullett* v. *Farley*, 164 id. 566.

The renunciation of the will by the widow does not make the testator's estate intestate. *McMurphy* v. *Bayles*, 49 Ill. 110; *Bayles* v. *McMurphy*, 55 id. 236.

If the widow fails to make renunciation and election in her lifetime her heirs cannot elect for her after her death. The right of election is a personal statutory right, not transmissible by descent. *Hawkins* v. *Bohling*, 168 Ill. 214; Redfield on Wills, part 2, p. 754, clause 33.

The doctrine of *res judicata* embraces all matters actually determined and extends to all other matters which might have been raised and determined. *Speck* v. *Pullman Car Co.* 121 Ill. 33; *Bennitt* v. *Mining Co.* 119 id. 9; *Riverside Co.* v. *Townshend*, 120 id. 9; *Neff* v. *Smyth*, 111 id. 100; *Knobloch* v. *Mueller*, 123 id. 554; *Kelly* v. *Donlin*, 70 id. 378; *Litch* v. *Clinch*, 136 id. 410; *Cheney* v. *Patton*, 134 id. 422; *Rogers* v. *Higgins*, 57 id. 244; *Hamilton* v. *Quimby*, 46 id. 90; *Ruegger* v. *Railroad Co.* 103 id. 449; *Frew* v. *Taylor*, 106 id. 159.

A *bona fide* purchaser of real estate sold under partition decree will be protected against any possible claims or interest, of any character, of parties to the proceedings. *Knobloch* v. *Mueller*, 123 Ill. 554.

D. B. SHERWOOD, for appellee:

The question involved in this case is one of inheritance, and not one of dower.

It having been judicially determined that Charles G. Read, the husband of the deceased, died intestate as to his real estate, it follows that the widow became his heir-at-law to the extent of one-half of his real estate, without any affirmative act on her part. Rev. Stat. chap. 39, secs. 1, 2; *Tyson* v. *Postlethwaite,* 13 Ill. 727; *Rawson* v. *Rawson,* 52 id. 62; *Richards* v. *Miller,* 62 id. 417.

The Statute of Descent and the Statute of Dower are entirely distinct and separate, relating to different subjects, each vesting rights in a widow of a distinct character, and one was not intended to abridge the other. *Rawson* v. *Rawson,* 52 Ill. 62; *Sutherland* v. *Sutherland,* 69 id. 481.

Sections 10, 11 and 12 of the act relating to dower has no reference to inheritance, or to the rights of husband or wife as heir to each other, but solely to their rights as widow or surviving husband. *Sutherland* v. *Sutherland,* 69 Ill. 481; *Gauch* v. *Insurance Co.* 88 id. 251; *Christy* v. *Marmon,* 163 id. 225.

If the estate is testate in part and intestate in part, that which is intestate will descend to the heirs-at-law as determined by the statute, and if the husband or wife is an heir-at-law, he or she will take that part of the intestate estate allotted to her by the statute, even though there be a provision in the will for the benefit of such husband or wife. *Richards* v. *Miller,* 62 Ill. 417.

In all cases where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must be as to the point or question actually litigated and determined in the original action,—not what might have been litigated or determined. *Riverside Co.* v. *Townshend,* 120 Ill. 9.

Where the parties are different or the subject matter is different the principle of *res judicata* does not apply. *Davis* v. *Kennedy,* 105 Ill. 300; *Williams* v. *Walker,* 62 id. 517; *Bentley* v. *O'Bryan,* 111 id. 53.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The motion of appellee to dismiss the appeal for want of jurisdiction in this court, reserved to the final hearing, will be first disposed of. In *Lynn* v. *Lynn*, 160 Ill. 307, where a similar question was raised, the whole subject was exhaustively considered and the statutes carefully compared, and we there held that section 88 of the Practice act, as amended, and section 8 of the Appellate Court act, relating to the appellate jurisdiction of the Appellate and Supreme Courts, controlled such appeals, and that under the present statute such a proceeding involved a freehold, and that the appeal was properly taken to this court. That decision is conclusive, for here, as there, the title is involved and is the principal question in the case. The motion will be overruled.

Appellants contend, first, that Olivia Read took nothing by descent from Charles G. Read; second, that Mary Wentworth is estopped from setting up any claim against the lands of Charles G. Read because of her failure to set up such claim in the partition suit, to which she was a party; and third, that said real estate cannot be sold to pay her claim for the reason that it was not presented or filed within the two years fixed by the statute, and also for the reason said real estate is not property inventoried or accounted for after the expiration of said two years, within the terms of her judgment allowing the claim.

The will of Charles G. Read gave to his wife all of his property, both real and personal, of which he died seized, to be accepted by her in lieu of dower, during her natural life. There is no other disposition made of the real estate, and there is no residuary clause. The will nowhere attempts to dispose of the fee in the realty. It is not devised to any one. In such case, the provisions of section 12 of the Statute of Descent must control, which provides that "all such estate, both real and personal, as is not devised

or bequeathed in the last will and testament of any person, shall be distributed in the same manner as the estate of an intestate." As to the fee of these lands Charles G. Read died intestate, and the third paragraph of section 1 of the Statute of Descent became applicable, which is as follows:

"*Third*—When there is a widow or surviving husband, and no child or children, or descendants of a child or children, of the intestate, then (after the payment of all just debts) one-half of the real estate and the whole of the personal estate shall descend to such widow or surviving husband as an absolute estate forever, and the other half of the real estate shall descend as in other cases where there is no child or children or descendants of a child or children."

In cases where there is a widow and no descendants of the deceased the widow inherits one-half of the realty and is entitled to dower in the other half. (*Shoot* v. *Galbreath*, 128 Ill. 214.) In this case the widow's dower in the other half was one-third, but her husband chose to give her, in lieu of that dower, a life estate in all of his real estate. While this was more than the statute gave, still he had the undoubted right to make such provision for his wife.

Appellants insist that section 12 of the Dower act is applicable to the facts of this case, and that Olivia Read by her acts elected to take under the will and was thereby barred from taking under the statute. But section 12 of the Dower act relates to cases in which the husband or wife dies testate, and not to cases of intestacy. The husband in this case died, as we have seen, wholly intestate as to the fee in his lands, and it is this fee only which is here involved. We are therefore of the opinion that this provision of the Dower act has no application here. It is manifest that her failure to elect under the statute relating to dower could affect none of her interests except her dower, and, at most, her distributive share

of her husband's personal estate. (*Carper* v. *Crowl*, 149 Ill. 465.) The same line of reasoning applies to section 10 of the Dower act, which is also quoted by appellants. That section has no reference to the statutory rights of husband and wife to inherit from each other in cases of intestacy. *Gauch* v. *St. Louis Mutual Life Ins. Co.* 88 Ill. 251.

As the statute now is, the county court was authorized to determine all questions of conflicting or controverted titles, and the decree was correct in finding that one-half of said real estate passed to Olivia Read upon the death of her husband, and that she died seized of said undivided one-half, and that appellants had no right, title or interest in the same, but owned the other half according to their respective deeds. This half belonging to the heirs of Olivia Read remained unaffected, as to them, by the decree in the partition suit, because they were not parties to that case.

It does not appear that the county court expressly determined the question raised by Mary Wentworth in her answer, that two-thirds of said one-half of said real estate was devised to her and the other third to Henry B. Read, by the will of Olivia Read. Indeed, that question would not be material to the application to sell to pay debts, as the lands would be first subject to this charge, whether devised or not. The question would become important only in making an order for the distribution of any surplus, or in some other action for the recovery of any of such real estate that might remain unsold. It is manifest that even if the effect of Mrs. Read's will was to devise to Mary Wentworth two-thirds of said one-half, and that she is now barred from asserting title thereto because of her failure to set it up in the partition case and by the final decree in that case, still the right of the administrator to sell to pay debts would remain unaffected, unless, as contended by appellants, that right is also barred by the decree in the partition case. The effect of the decree of the county court, however, in finding that

appellants owned only one undivided half, was to find, either that Mary Wentworth took no interest in the land as devisee of Olivia Read, or, if she did, that appellants' rights were not enlarged by virtue of any estoppel arising from the decree against her in the partition suit. It is not claimed by either party that the contingency upon which the devise of Olivia Read of the land in question to Mary Wentworth and Henry B. Read was to take effect ever happened. It does not appear that the will of Charles G. Read was ever declared null and void, but, on the contrary, it was admitted to probate and has been acted upon as valid by all parties. It simply contained no provision making any devise of the fee in the real estate or any charge of the legacies upon the same. It has been construed and its meaning interpreted and carried into effect. It seems clear, therefore, that Mary Wentworth did not take any interest in the real estate under Olivia Read's will, and that being so, no such interest was barred, as against her, by the partition decree, and so far as it related to that alleged interest the order of the county court is right on the question of *res judicata* raised by appellants.

But it is also contended that the right of the administrator to sell the undivided half in controversy of this land to pay Mary Wentworth's claim is also barred by estoppel—that that question is also *res judicata* because they were both parties to the partition suit and the question was not there raised and is concluded by the decree. When that suit was begun Olivia Read was dead and her undivided half of the lands had descended to her heirs-at-law, but they were not made parties to the bill. The suit proceeded to a decree on the theory that Olivia Read, the widow, had been barred of her right to inherit one-half of the land by taking the provision made for her in the will and not renouncing the same. The only allegation in the bill as to Mary Wentworth, and the ground on which she was made a party, was that she, with her

husband, also made a party, was in possession of one of the pieces of real estate,—a house and lot,—and owed rents. Henry B. Read was not made a party, but came in and with Mary Wentworth filed pleas claiming, as before stated, that their legacies in the will of Charles G. Read were a charge upon the land. As administrator Henry B. Read was not a party to that suit, and could not have been, for he had not then been appointed as such. No question concerning the administration of the estate of Olivia Read was raised or determined in that suit. The administration of that estate was then properly pending in the county court, and the circuit court was not the proper forum to determine questions of the allowance of claims and passing upon the accounts of the administrator. That in the exercise of their equitable jurisdiction circuit courts are authorized to take charge of the administration of estates in certain cases is undoubted, but it is well settled that they will not do so except in extraordinary cases. (*Heustis* v. *Johnson*, 84 Ill. 61; *Crain* v. *Kennedy*, 85 id. 340.) Mary Wentworth had no judgment, and while she had the right to have this land subjected to the payment of her debt through proper proceedings in the county court, she was not a necessary party in the partition suit, and her rights as such claimant were not barred by the decree in that suit. The circuit court could not have effected a settlement of Mrs. Read's estate by anything Mary Wentworth could have done in the case in that court. Besides, her claim was against the title of the heirs of Olivia Read, and they were not parties, and could not have been concluded by any decree in the case. The practice of taking decrees of partition and of sale in partition suits before it can be known whether or not they will be required to sell the land to pay debts is not unusual, but is to be deprecated. Courts of equity will not take the administration of estates from the county court simply to facilitate the partition of real estate, and purchasers at such sales must take notice of the rights of

creditors of the deceased owner. And in this case actual notice was given at the sale. It is elementary that the decree of the court in the partition case that no other person has any interest in the property except as alleged in the bill and found by the decree would not affect the rights and interests of persons who were not parties to the suit.

We hold that this cause, as an application to sell said undivided half to pay said debt, is not affected by the record or decree in the partition case, and that Mary Wentworth is not estopped thereby from asserting her rights as a claimant against the estate of Olivia Read.

The next contention of appellants is, that the claim of Mary Wentworth was not a proper charge against the real estate of Olivia Read, because it was not presented within two years after the issuing of letters testamentary, and that she could not take advantage of her own delay or neglect in filing an inventory, and then, after the lapse of two years, treat this real estate as subsequently discovered property. It does not appear that any one discovered that Olivia Read owned the undivided half of the lands in question within two years after her death, and we see no evidence of willful neglect or fraudulent purpose in Mary Wentworth's failure to include it in her inventory. By the seventh clause of section 70 of the Administration act the payment, *pro rata*, of demands not exhibited within two years, out of "such subsequently discovered estate,"—that is, estate not inventoried or accounted for by the executor or administrator,—is provided for. Her claim was a just one, as clearly appears from the record, and we are of the opinion that she had not lost the right to have the real estate of her debtor sold to pay it, neither by lapse of time (about four years) nor by her acts or omissions.

The order and decree of the county court must be affirmed.

　　　　　　　　　　　　　　　　*Decree affirmed.*