HARVEY W. HARMER, *Admr.*

*v.*

CLYDE B. BOGGESS, *Executor, etc., et al.*

(No. 10485)

Submitted September 16, 1952. Decided December 2, 1952.

*Maxwell & Young, Haymond Maxwell, Sr.* and *E. A. Bartlett*, for appellants.

*Steptoe & Johnson* and *Chesney M. Carney*, for appellee.

BROWNING, JUDGE:

Myrtle F. West, a resident of Harrison County, West Virginia, died in Clarksburg on January 1, 1949, leaving a holographic will in the following form and verbiage:

> "Sept 17—1947
> This is my last
> will & testament
> All my real estate
> & personal property
> except—
> 1000 to Geo. Holden
> 1000 " Myrtle E. Cooper
> 1000 " John Boggess
> & my home on
> Washington Ave.
> to be Geo. Wests my
> husband as long as
> he lives & then it
> is to go to support
> a Missionary in
> the Foreign Field.
>
> Myrtle F. West"

She died seised and possessed of real and personal property of the appraised value of $56,165.56, of which $39,700.00 represented real property, and $16,465.56 represented personal property. Myrtle F. West was survived by her husband, George M. West, who was duly appointed

and qualified, on the 26th day of January, 1949, as the administrator with the will annexed of the estate of Myrtle F. West.

George M. West died testate on the 17th day of May, 1949, without completing the administration and settlement of the estate of Myrtle F. West, and Harvey W. Harmer, on June 14, 1949, was duly appointed and qualified as administrator *de bonis non* of the estate of Myrtle F. West. He filed this suit praying for a construction of the will and naming as defendants Clyde B. Boggess, executor of George M. West, the heirs at law and distributees of George M. West and the various foreign missions of the First Methodist Church of Clarksburg.

Ada F. Boughner, and others, the nearest surviving blood relatives of Myrtle F. West, petitioned the court to be made parties defendant, which petition was allowed, and they were granted leave to file an answer and cross-bill. Myrtle F. West left surviving her no child, nor the descendant of any child, no father nor mother, no brother nor sister, nor descendant of any brother or sister.

George M. West did not renounce the will of Myrtle F. West between the time it was admitted to probate and his death.

The issues in dispute in this cause were submitted to the trial chancellor upon the pleadings, a stipulation of the facts, as heretofore related, and a stipulation of facts as to Myrtle F. West's membership in the First Methodist Church of Clarksburg, and her activities in the foreign mission divisions thereof. The trial chancellor made the following ruling:

> "FIRST: That the provision in said will '& then it is to go to support a Missionary in the Foreign field' is not enforceable and is void because of indefiniteness.
>
> "SECOND: That George M. West took the estate, both real and personal, of Myrtle F. West, other than the specific gifts to the individuals named in her will, as the sole heir at law and distributee of the estate of said Myrtle F. West

under the laws of descent and distribution of West Virginia, and that the same passed to those entitled thereto under his will.

"THIRD: That Harvey W. Harmer, administrator de bonis non of Myrtle F. West, is hereby authorized and directed to pay and transfer to Clyde B. Boggess, executor of the will of George M. West, deceased, the residue of the personal property of the estate of Myrtle F. West after the payments of debts, taxes, cost of administration and the three specific bequests of money.

"FOURTH: That as of the time of the death of Myrtle F. West all of her title to real estate passed to and became vested in George M. West as her sole surviving heir at law."

The various foreign mission divisions of the First Methodist Church of Clarksburg, who were parties to this cause in the lower court, did not seek an appeal from the ruling of the trial court, therefore, we hold that they have abandoned their claim as beneficiaries, under the will of Myrtle F. West, although it is not the unanimous opinion of this Court that the residuary devise and bequest are void for the reasons stated in the decree of the trial court.

Code, 41-3-4, reads as follows: "Unless a contrary intention shall appear by the will, such real or personal estate, or interest therein, as shall be comprised in any devise or bequest in such will, which devise or bequest shall fail or be void, or be otherwise incapable of taking effect, shall, if the estate be real estate, be included in the residuary devise, or, if the estate be personal estate, in the residuary bequest, if any residuary devise or bequest be contained in such will, and, in the absence of such residuary devise or bequest, shall pass as in case of intestacy." It was the residuary clause itself that failed in this instance, but we believe a reasonable interpretation of this section indicates that it was the intention of the Legislature that property attempted to be devised and bequeathed by an invalid residuary clause should pass as in the case of intestacy. It is for us to determine, therefore, the proper devolution of the attempted missionary benefaction as

between the heirs at law and distributees of Myrtle F. West, and the heirs at law and distributees of her husband, George M. West, deceased.

Under our statutes of descent and distribution, Code, 42-1-1, and Code, 42-2-1, George M. West became the sole heir at law and distributee of Myrtle F. West, no other persons having survived her in the line of descent and distribution whose rights were paramount or equal to those of her husband. Those facts being true, there would be no question but that George M. West took the estate of his wife, Myrtle F. West, upon her death under the laws of descent and distribution, and that the same would have passed to his heirs under his will, unless they are excluded from participation by Code, 42-3-1, which provides: "When any provision is made in a will for the surviving wife or husband of the testator, such surviving wife or husband may, within eight months from the time of the admission of the will to probate, renounce such provision. * * * If such renunciation be made, or if no provision be made for such surviving wife or husband, such surviving wife or husband shall have such share in the real and personal estate of the decedent as such surviving wife or husband would have taken if the decedent had died intestate leaving children; otherwise the surviving wife or husband shall have no more of the decedent's estate than is given by the will."

It is somewhat surprising to find that this precise question is one of first impression in this State. It arises out of the unique position in which a husband or wife is placed under our law of descent and distribution. If we examine the statutes on descent and distribution, and those on dower and courtesy through the history of this State, Virginia as a state, and prior thereto as a colony, as well as the statutes and common law of England, we observe the origin and development of the dual rights arising in a husband or wife in the property of the other. It is for us to determine in this cause whether it was the intention of the Legislature of this State, by the language used in Code, 42-3-1, *supra,* to say that the rights of a

husband and wife, in the heirship of property within the statutes of descent and distribution, were clearly divisible from the rights arising out of their marital relationship, or whether they were dependent upon each other so that the acceptance of one would result in the loss of the other.

The provisions of Code, 42-3-2, at this point are interesting: "If a person make provision by will for his or her surviving wife or husband, such provision shall be construed to be in lieu and bar of dower and distributive share of the personalty in the estate of the deceased consort, and such provision, unless the same be renounced as provided in the preceding section, shall be all that such surviving wife or husband shall take of the estate of the deceased consort, unless it clearly appears from a construction of such will, and the attendant facts proper to be considered in connection with it, that the testator intended the surviving wife or husband to take the estate or interest given by the will in addition to his or her dower and distributive share of the personalty."

In *Douglas* v. *Feay,* 1 W. Va. 26 (1864), it was held that: "A testamentary provision in favor of a widow is not to be construed as in lieu of dower, unless it is declared so to be in express terms; or, unless, the intention of the testator to make the provision in lieu of dower, can be as satisfactorily ascertained as though it were expressed; or, the intention is so clearly manifest, that the claim of dower would be inconsistent with the will, and would defeat and disturb its provisions." *Miller* v. *Miller,* 76 W. Va. 352 (1915), 85 S. E. 542, is to the same effect: "A widow is not barred of her dower right for failure to renounce a will of her husband which makes provision for her, unless from the will the intention clearly appears that the provision is in lieu of dower."

There are several other West Virginia cases to the same effect, but it must be noted that all of them were decided prior to the adoption of Code, 42-3-2. It is contended by counsel for appellees that the very purpose of Code, 42-3-2, was to abolish the rule of the *Miller* case,

and of similar cases decided prior to the revision. This Court has not had the question presented to it in any case arising since passage of the Act in its present form.

We do not believe that Code, 42-3-2, has any applicability to the issue to be determined in this cause. That section has reference only to the marital rights of a surviving wife or husband in the property devised and bequeathed by the will. The right of inheritance of property is basic in our law, along with a statutory determination of the course of descent, and we do not believe that these fundamental rights are affected by the intention of the testator in this cause, no matter what it may have been, as to that part of her property which passes intestate because of the void residuary clause.

In *Graham* v. *Graham,* 23 W. Va. 36, 40 (1883), this Court said: "* * * The heir at law never takes by the act or intention of the testator. His right is paramount to and independent of the will, and no intention of the testator is necessary to its enjoyment. On the contrary, such right can only be displaced or precluded by direct words or plain intention, evincing a desire on the part of the testator, that he shall not take, etc. He needs no argument or construction showing intention in his favor to support his claim. They belong to the party claiming under the will and in opposition to him. * * *" To the same effect is *Tea* v. *Millen,* 257 Ill. 624, 101 N. E. 209, 211: "No matter how strong the intention of the testator may be to disinherit an heir, the intention cannot be given any effect as to intestate property, and the only method of disinheriting him is to give the property to someone else."

We believe that Code, 42-1-1, and Code, 42-2-1, provide for the inheritance and distribution of real and personal property; that Code, 42-3-2, deals with the intention of a testator as to the interest to be taken thereunder concerning dower and distributive shares of property; and that Code, 41-3-4, the so-called void gift statute, and Code, 42-3-1, with reference to renunciation by a consort dis-

satisfied with the provisions of a will, are *pari materia,* and must be construed with reference to each other. This Court is of the opinion that the Legislature did not intend, with the language used in Code, 42-3-1, the renunciatory section, to deny to a surviving spouse, who failed within the statutory period to renounce the will of the deceased consort, the rights in intestate real or personal property given to him by the provisions of Code, 42-1-1, and Code, 42-2-1. We find no cases in point in Virginia, and, as heretofore stated, the problem has not been dealt with in this State by this Court. Cf. *Beard* v. *Callison, et al.,* 133 W. Va. 121, 54 S. E. 2d 568. In *Taylor* v. *Browne,* (1830) 2 Leigh 419, we find this interesting language: "* * * It does not mean, that unless the widow renounces the will, she shall be prevented from making claim to property to which she is entitled, not under the will, but from a different source. * * * These cases shew (if, indeed, anything can shew it more clearly than the statute itself) that the provision in question concerning a widow's renunciation of her husband's will, has nothing to do with a case, where she has a claim to property independent of and paramount to the will."

We believe the great weight of authority outside West Virginia to be that the surviving spouse takes the intestate property under the statutes of inheritance, and that this basic and fundamental right is not to be defeated by other statutes dealing with renunciation and intention of the testator, unless such statutes clearly state it is their intention to do so. *In re Freeman's Estate,* 227 Pa. 154, 75 Atl. 1063 (1910); *In re Thompson's Estate,* 229 Pa. 542, 79 Atl. 173 (1911); *Sutton* v. *Read,* 176 Ill. 60, 51 N. E. 801 (1898); *Ness* v. *Lunde,* 394 Ill. 286, 68 N. E. 2d 458 (1946); *State* v. *Holmes,* 115 Mich. 456, 73 N. W. 548 (1898); *Kaser* v. *Kaser,* 68 Ore. 153, 137 Pac. 187 (1913); *Busby* v. *Busby,* 142 S. C. 395, 140 S. E. 801 (1927); *Wall* v. *Dickens,* 66 Miss. 655, 6 So. 515 (1899); *Marx* v. *Hale,* 131 Miss. 290, 95 So. 441 (1923); *In re McIntire's Estate,* 164 Misc. 895, 300 N. Y. Supp. 173 (1937); *Doane* v. *Mercantile Trust Co.,* 160 N. Y. 494, 55 N. E. 296 (1899); and Notes 1917D L. R. A.

762 and 93 A. L. R. 1384. *Mechling* v. *McAllister*, 160 N. W. 1016, a Minnesota case, and *Leoke* v. *Watson*, 21 Atl. 1075, a Connecticut case, are to the contrary.

In *Wall* v. *Dickens, supra,* it is stated:

"* * * It is certainly true that, when one dies the owner of lands or goods, not disposed of by will, he dies intestate as to them, and the law casts descent upon his heir, and when the widow is the heir the same result must occur, whether the intestacy be partial or entire.

"The rule as to a provision by will for the widow, and its acceptance, being in lieu of dower or share of personalty, was made for the ordinary case of the widow being one of several heirs in the same degree, who is not to be allowed to defeat the arrangement made by taking under the will and under the law, and is put to her election; but where all is hers, and there are no conflicting rights, and there is none to contest with her the heirship to her husband, the statute has no application."

We quote also from the *Thompson* case: "* * * Her election to take the legacy under the will was in lieu of her interest in the part of the estate as to which there was a testacy, but not as to the part of the estate as to which there was an intestacy."

The statute of renunciation, historically originated and presently exists for the protection of the surviving consort of a marriage severed by death, and the construction of our renunciatory Act sought by the appellants, could convert it into a possible weapon to be used against such survivor of the marital relationship, or even as a means of entrapment by a scheming or designing spouse, as he or she made final testamentary preparations for departing this life.

It is the opinion of this Court that upon the death of Myrtle F. West, her husband, George M. West, became the sole heir at law and distributee of her estate, other

than the specific bequests contained in the will, and that title thereto passed, upon his death, to those entitled thereto under his will.

The decree of the Circuit Court of Harrison County is affirmed.

*Affirmed.*