## Wytheville.

## KELLO V. KELLO'S EXECUTORS AND OTHERS.

### June 10, 1920.

1. WILLS—*Construction—Surrounding Circumstances.*—In order tne better to comprehend the scheme which the testator had in his mind for the disposition of his estate, the judicial expositor is permitted to place himself, figuratively speaking, in the very shoes of the person, whose will he is called on to construe, and with the aid of such extrinsic evidence as is permissible, possess himself of the condition of the testator and his family and of such surrounding facts and circumstances as may be reasonably supposed to have influenced him in the disposition of his property.

2. WILLS—*Construction—Effect Given to Every Part and Word— Limitations of Rule.*—The rule of construction is familiar that a will should be so interpreted as to give effect to every part and word thereof, provided some effect can be given to each word not inconsistent with the general intent manifested by the entire instrument. It is a sound rule that no word of a will should be rejected, if it can have a possible meaning. But it is equally true that words often, and of necessity, are rejected by the judicial expositor in the determination of the real intent of the testator.

3. WILLS—*Construction—Effect Given to Every Part and Word— Limitations of Rule.*—The instrument must be considered as a whole, and his intent must be sought in all of the words used, giving them in the first instance the meaning fixed by the accepted rules of construction. If that interpretation produces difficulties and creates conflicts between different portions of the instrument, leaving the intent of the testator obscure, then the expositor must determine whether the general intent derived from the entire will does not require the rejection of some word or words, or stamp them with a meaning different from the apparent or usual meaning.

4. WILLS—*Construction—Aid from Prior Decisions.*—It often happens that the same identical words require very different construction in different cases, according to the context and the peculiar circumstances of each case. Hence, but little aid can be derived by the court in construing a will from prior decisions construing other wills.

5. Wills—*Heir Interchangeable With Heirs.*—In law the word "heir" is interchangeable with the plural term "heirs," and conversely, when such a construction is justified by the context; but if the context indicates that the testator had "heirs," in its plural sense, definitely in contemplation as the first takers, and not an heir, then that intent must be made effective.

6. Wills—*Heir Interchangeable with Heirs—Case at Bar.*—Thus, where a testator used the words "my then living heirs," associated with the words "divided," or "divided equally," or "for purposes of equal partition," at three different places in his will, the repetition in the will of the provision for dividing the estate between the nearest heirs, a naturally plural term, indicates that the uppermost thought in the mind of the testator was that his estate should pass at his death, not to a single taker, but to several.

7. Words and Phrases—*"Heirs"—"Next of Kin."*—"Heirs" is a highly technical word, while "kin" is not. The word "heirs" has been defined in Virginia as the "next of kin" who take under the statute of descents. The nearest in blood according to nature do not always share in the inheritance under the statute of descents. For instance, a father inherits the estate of a son to the exclusion of the mother, though she is equally near in blood to the son.

8. Wills—*Construction—Nearest Heirs.*—The statute of descents provides for the passage of estates. The person or group of persons, who take in any given case by the terms of the statute, may be regarded in law as the nearest heirs, since they take to the exclusion of all others.

9. Wills—*Construction—Gift to Nearest Heirs.*—A testator, after numerous specific gifts, provided that the balance of his estate should be divided equally between "all my then living nearest heirs." Testator left a brother, seven nephews and nieces, children of a deceased brother and sister, and great nephews and nieces.

   *Held:* That the words "nearest heirs" were not synonymous with the words "nearest of kin" and that the brother did not take to the exclusion of the other relatives but the testator, by the use of the words "then living nearest heirs," intended that group or collection of his kin upon whom the law would cast the inheritance in case of intestacy.

Appeal from a decree of the Circuit Court of Southampton county. Decree for defendants. Complainant appeals.

                                        *Affirmed.*

47

The opinion states the case.

*Jno. N. Sebrell, Jr.,* for the appellant.

*Jas. H. Corbitt* and *Jas. T. Gillette,* for the appellees.

SAUNDERS, J., delivered the opinion of the court.

This appeal brings before this court for construction the will of John G. Kello, a citizen of Southampton county. The will is herewith reproduced in full:

"I, John G. Kello of the county of Southampton, and State of Virginia, being of sound and disposing mind, do hereby make, publish and declare this to be my last will and testament, hereby revoking all other wills by me at any time made:

"First. I desire all my just debts to be paid if I should owe any at my death.

"Second. I give to Alex. Bradshaw and his sister Antonette Bradshaw, the farm on which they have lived for a number of years and on which they now live, during their lives, and at their deaths to be sold and divided between my then living nearest heirs.

"Third. I give to my brother, Everett D. Kello, one thousand dollars.

"Fourth. I give to my niece, Maggie P. Barrett, one thousand dollars.

"Fifth. I give to my niece, Aleas Simmons, one thousand dollars.

"Sixth. I give to my neice, Mary *Mary* O. Kello, one thousand dollars.

"Seventh. The balance of my estate I desire to be divided equally between all of my then living nearest heirs.

"Eighth. I give to my executors hereinafter mentioned, full power to sell all of my real estate except that left in

section two, of this will, to Alex and Antonette Bradshaw, for purposes of equal partition among all of my then living nearest heirs.

"Ninth.   I do hereby nominate and appoint my nephew, John G. Kello, Jr., and Thomas S. Kello, as my executors of this, my last will and testament.

"In witness whereof, I hereunto subscribe my name and affix my seal to this my last will and testament on this 30th day of March, 1916.

"JOHN G. KELLO, (Seal)."

The testator, who was a bachelor about seventy years old, left surviving him heirs in three different degrees of kinship, as follaws:

1.   A brother, E. D. Kello.

2.   Seven nephews and nieces, viz: John G. Kello, Jr., S. T. Kello (in the will T. S. Kello), J. R. Kello, Jr., Elise Simmons (in the will Aleas Simmons), Mattie O. Kello (in the will Mary O. Kello), Samuel H. Delk and Maggie U. Barrett (in the will Maggie P. Barrett).   John G. Kello, Jr., S. T. Kello, J. R. Kello, Jr., Mattie O. Kello and Elise Simmons are the children of J. R. Kello, a brother of the testator; and Samuel H. Delk and Maggie U. Barrett are the children of Mrs. Delk, a sister.   This brother and sister predeceased the testator.

3.   One great-niece, Mary O. Davis, and two great-nephews, John D. Delk and Thomas E. Delk.   The latter two are the children of "Buggy" Delk, a dead son of Mrs. Geo. Delk.   Mary O. Davis is the daughter of Nettie Kello Davis, a deceased daughter of J. R. Kello.

The testator left an estate valued at about thirty thousand dollars.   The executors construed the will to mean that the estate should be divided equally between the brother and the nephews and nieces, to the exclusion of the more remote kin, and were proceeding to settle the estate upon

that theory when they were interrupted in the execution of this purpose by a suit brought by Mary O. Davis, the great-niece, claiming an equal interest in the fund. For some unexplained reason this suit was dismissed. Thereupon, E. D. Kello, the brother, filed a bill claiming the entire residuum, on the ground that he was the nearest living kin of the testator at the death of the latter.

This bill. was taken for .confessed as to the adult defendants, no answer or appearance of any kind having been made by them. An answer was filed for the infants, Mary O. Davis, John D. Delk and Thomas E. Delk, by a regularly appointed guardian *ad litem*. This answer challenged the contention that the will, properly construed, lodged the residuum in the brother, Everett D. Kello, and insisted that according to the true intent of the testator this residuum should be equally divided between all his heirs, living at the time of his death, to-wit: the above recited brother, nephews and nieces, and great-niece and great-nephews.

In August, 1919, the Circuit Court of Southampton county entered a final decree in the above cause, directing the executors to divide the residuum into eleven equal parts, and give one part each to the brother of the testator, to the nephews and nieces, and to the great-nephews and great-niece, as above described. To this decree, on the petition of E. D. Kello, the plaintiff in the suit in the circuit court, an appeal and supersedeas was allowed by one of the judges of this court.

In the very elaborate and able brief filed in behalf of the appellant, many authorities are cited, chiefly from the English courts. The precise question presented for determination in the instant case, namely, the construction of a devise to one's "nearest heirs," appears to be one of first impression in this State, and of comparatively rare occurrence in other jurisdictions. Many cases have been cited in which the testators have described the objects of

their bounty as "my nearest surviving relations," or "my nearest and next of kin," or "my nearest of kin," or by like descriptive words, but as the decisions in these cases do not hold that these phrases are synonymous with "nearest heirs," obviously these rulings are not very helpful, much less controlling. It is insisted on the part of the appellant that by the phrase "nearest heirs," the testator means to designate that class of persons which will bear to him the closest degree of kinship or blood relationship at his death, and that the word "nearest," if it is to be given any meaning whatever, must be construed to pass the estate to the kin of the testator in the order of their blood relationship, the remoter kin to be excluded in succession in favor of the nearer, until at last the nearest is reached.

[1] It is very difficult to derive the intention of the testator from the words used in the will, nor is that difficulty lessened by an inspection of the meagre accompanying facts. Frequently the task of elucidating the obscure language of a testator is removed by the revelations afforded by the facts and circumstances under which the will was made.

"In order the better to comprehend the scheme which the testator had in his mind for the disposition of his estate, the judicial expositor is permitted to place himself, figuratively speaking, in the very shoes of the person, whose will he is called on to construe, and with the aid of such extrinsic evidence as is admissible for the purpose, possess himself of the condition of the testator and his family and of such surrounding facts and circumstances as may be reasonably supposed to have influenced him in the disposition of his property. *Wootten* v. *Redd,* 12 Gratt. 205; *Hooe* v. *Hooe,* 13 Gratt. 245; *Williamson* v. *Coulter,* 14 Gratt. 398. With the lights thus afforded him, he is prepared as well as it is possible for him to be, without letting in evidence of the testator's actual intention as contradistin-

guished from his written meaning, to declare, upon careful examination and comparison of all parts of the will, what is the meaning of the words which the testator has seen fit to employ." *Hatcher* v. *Hatcher*, 80 Ga. 169, 171.

Apparently, the testator, in the instant case, was on terms of equal affection with all of his relatives concerned in this controversy, and there is nothing to indicate that he had any reason to make exceptional preferences in the disposition of his estate, or to arrange a scheme of succession under which the brother would take first to the exclusion of all others, and, secondarily, the nephews and nieces to the exclusion of the great-nephews and great-niece. These nephews, nieces and others were not as close in blood to the testator as the brother, but they were the offspring of ancestors who bore the same degree of relationship to him, and so far as the court knows, were regarded by him with the same affection as the surviving brother. While the brother is, apparently, a man of independent means, the pecuniary condition of the others is not revealed.

[2, 4] The paucity of the evidence relating to the circumstances attendant upon the making of the will in the case in judgment leaves us to seek the derivation of the testator's intent from the language of the will, without material extraneous aid. Some of this language indicates one intent; other language seems to point to a different intent. It is difficult to bring all of the language used into harmony, or to reach a conclusion entirely free from doubt. The rule of construction is familiar, that a will should be so interpreted as to give effect to every part and word thereof, provided some effect can be given to each word not inconsistent with the general intent manifested by the entire instrument. It is a sound rule that no word of a will should be rejected, if it can have a possible meaning. But it is equally true that words often, and of necessity, are rejected by the judicial expositor in the determination

of the real intent of the testator. The instrument must be considered as a whole, and his intent must be sought in all of the words used, giving them in the first instance the meaning fixed by the accepted rules of construction. If that interpretation produces difficulties and creates conflicts between different portions of the instrument leaving the intent of the testator obscured, then the expositor must determine whether the general intent derived from the entire will does not require the rejection of some word or words, or stamp them with a meaning different from the apparent or usual meaning. "It often happens that the same identical words require very different constructions in different cases, according to the context and the peculiar circumstances of each case." *Rhett* v. *Mason,* 18 Gratt. (59 Va.) 560. Hence, having in mind the importance of the context in interpreting particular words and phrases, the learned judge delivering the opinion in this case concludes that but "little or no aid can be derived by the court in construing a will from prior decisions construing other wills." *Id.,* p. 560. .

The traces of the testator's intention must be sought in every portion of the will, and the whole carefully weighed together. The intent apparently indicated by the word or words used in one paragraph is often put in doubt by words used in other portions of the instrument, and equally entitled to be given effect. In such cases one, or more, of the conflicting words must yield to the general intent considered to be revealed by the entire instrument.

The appellant, in the instant case, insists that the words "nearest heirs," mean the nearest in blood to the testator living at the time of his death, and that as he alone falls within that description, he is entitled to the entire residuum. If the words, "nearest heirs," were synonymous with the words, "nearest of kin," the contention would be irresistible. As it is, it is a persuasive one. But there is other

language in the will indicating that the testator, when he used the words "nearest heirs," did not contemplate that his estate should pass to a single brother under that designation, but rather that he had in mind a group of takers. It may well be asked, if the testator contemplated and intended that, at his death, the residuum should pass in its entirety to a single brother, why in another portion of his will he provided for a partition of this residuum between "all of his then living nearest heirs?" The testator made several special bequests, thereby showing that he was fully capable of distinctly providing for any individual cases that he particularly had in mind. One of these special bequests is to his brother, E. D. Kello. If after making this special provision for his brother, the testator had had further in mind to give this brother the large residuum of his estate, if he was living when the will became effective, it seems likely that in the seventh clause of that instrument he would have specially designated him to receive it, following that designation by appropriate provisions for the passage of the residuum in the event that his brother predeceased him.

[5, 6] If the testator contemplated a situation in which his brother would take the entire residuum, then as applied to that situation the words, "divided equally between," are not very apt words for a single taker, nor would such a taker be ordinarily referred to as "all of the living nearest heirs" of a testator.

Of course, in law the word "heir" is interchangeable with the plural term, "heirs," and conversely, when such a construction is justified by the context; but if the context indicates that the testator had "heirs" in its plural sense, definitely in contemplation as the first takers, and not an heir, then that intent must be made effective. The testator at three different places in his will uses the words, "my then living heirs," associated with the words "divided," or "di-

vided equally," or "for purposes of equal partition," thereby indicating that he had in mind a plurality of takers at all times, and not a possible single taker in the first instance. If the testator, when he used the words, "all my then living nearest heirs," meant to say that all of his kin living at the time of his death should be equal participants in the residuum of his estate, the associated words cited *supra* are apt and appropriate, but if he had in mind a possible single taker, then those words are singularly infelicitous, and to bring them in harmony with the intent to give the residuum to the brother, they must be given by construction an unusual meaning, or regarded as words of mere surplusage. The repetition in the will of the provision for dividing the estate between the nearest heirs, a naturally plural term, indicates that the uppermost thought in the mind of the testator was that his estate should pass at his death, not to a single taker, but to several.

[7] Again, it may be asked why the testator did not use the words, "my then living next of kin," or "my nearest surviving relations," instead of the words actually used, if he intended that his estate should pass to the nearest of his blood living at his death? "Heirs" is a highly technical word, while "kin" is not. The word "heirs" has been defined in Virginia as the "next of kin" who take under the statute of descents. The nearest in blood according to nature do not always share in the inheritance under the statute of descents. For instance, a father inherits the estate of a son to the exclusion of the mother, though she is equally near in blood to the son. Failing a living father, the estate of the son does not pass exclusively to the mother, but to the mother, brothers and sisters. In the instant case, the testator left his estate to all of his "then living nearest heirs," that is, it may be fairly said, to his next of kin who would take according to the statute, or to that group of kin who for the purposes of inheritance are his nearest heirs in the contemplation of the statute.

48

[8]    The statute of descents provides for the passage of estates. The person or group of persons, who take in any given case by the terms of the statute, may be regarded in law as the nearest heirs, since they take to the exclusion of all others. At the death of John G. Kello, the next of kin to take his estate, and therefore, the nearest inheritors according to the statute, were the group of blood relations recited *supra.* All of these parties, in case of intestacy, would have inherited by the force and effect and upon the terms of the statute. Using the word "heirs," the testator in all likelihood had in mind the statute of descents, and intended to indicate as takers of his estate the persons prescribed by that statute. If the words, "my then living nearest heirs," are interpreted to mean next of kin as provided by statute, then no difficulty will arise with respect to the construction of the word "all" and the words "equal partition," or "division" or "equal division." These are apt words with reference to a plurality of takers.

It has been pointed out that there is nothing in the state of facts under which the will was made to indicate that the testator intended to provide in exceptional degree for any one of his kin. Hence, a construction of his will which would give the brother, a man of independent means, the entire residuum, in addition to his specific legacy of $1,000, cannot be derived from those facts. It must be derived exclusively from the language of the will. The difficulties in the way of such a derivation have been indicated.

In one of the cases cited by the appellant, that of *Brandon* v. *Brandon,* 3 Swans. 312, (36 Eng. Reprint 876), the court construed the words, "nearest and next of kin." After stating that the question for resolution was whether property belonged to the persons who were next of i. cording to the rule and measure established by the sta of distribution, or to those who were next of kin in a m. strict and natural sense, the court concluded that the wor.

were perfectly exempt from ambiguity, and as there was
nothing to show that the parties intended to refer to the
statute, the nearest in blood should take.  This decision was
perfectly logical and proper.  If the words, "nearest heirs,"
were perfectly exempt from ambiguity, and there was noth-
ing in the will in the instant case to indicate that the
testator had in mind the statute of descents, the construction
of this will would present no difficulties.  But it has been
pointed out that the word used in association with the word
"nearest" is "heirs," a technical word, with a meaning ex-
pressly related to the statute.  Hence, the difficulty of in-
terpreting the word "heirs" to mean "kin," or "blood rela-
tions," and of reconciling that meaning with the natural
meaning of other words used by the testator, relating to
the disposition of the estate.  All the cases cited, construing
the words, "next of kin," "nearest of kin," and equivalent
expressions, appear to us to have been correctly decided,
by giving the words their ordinary grammatical sense, in
the absence of a restraining context.  But such a context
indicating a different intent would cause the words "next
of kin" to be otherwise construed.

In the case of *Gwynne* v. *Muddock*, 14 Ves. p. 488, the
court construing the words "nighest heir at law" held:  "It
would be contrary to the intention to divide them (*i. e.,*
the real and personal property devised), and it would be
contrary to the words to give the whole to the next of kin.
Therefore, the court has no alternative but to adhere to the
words of the will, and permit the person who answers the
description of heir at law to enjoy the whole."

This case would seem in point as the next of kin were
before the court as claimants.  The court awarded the es-
tate to the heirs at law apparently upon the theory that
the persons who would take as heirs at law were neces-
sarily the nearest heirs at law.  Having in mind that the
word "heirs" means the next of kin according to our stat-

ute of descents, and therefore, the persons upon whom the law would cast the estate in the event of intestacy, the words "nearest heirs," used by the testator, John G. Kello, are equivalent to the words "nearest heirs at law," which are the precise words construed by Sir William Grant in the case cited, *supra.*

The word "heirs" when unexplained and uncontrolled by the context, must be interpreted according to its strict technical import, in which sense it obviously designates the person or persons appointed by law to succeed to the real estate in case of intestacy. 2 Jarman (5th ed.), p. 61; *Tillman* v. *Davis,* 95 N. Y. 24, 47 Am. Rep. 1.

[9] We have been at pains to point out that the context of this word in the will of John G. Kello, so far from controlling its meaning so as to make it the equivalent of "kin," indicates that the testator used it in its ordinary, well understood technical sense. The general intent of the testator indicates equality of taking and the purpose to include all of his surviving relations who would take under the statute of descents as his beneficiaries. After a scrutiny of the will under consideration, with an earnest desire to place that construction upon the language of the testator which the general sense of the instrument requires, we are of opinion that the testator, by the use of the words "then living nearest heirs," intended that group or collection of his kin upon whom the law would cast the inheritance in case of intestacy.

The conclusion reached, that the testator did not use the words "nearest heirs" to indicate that his relatives living at his death should take his estate in the order of their blood relationship, but did use them with the intent to designate a collective group to include all of those relatives, is in harmony with the general intent disclosed by the entire instrument. In the group of relatives who would have taken the estate, in the event of intestacy, are individuals

who are nearer in blood to the testator than others, and one who is nearest, but as a group they are his "nearest heirs." There is no nearer group, or other group in being which would take under the statute as heirs. With reference to this statutory taking, no individual member of this group can be said to be nearer in right, or nearest in right, since as heirs they would all take by force of the statute, and in the matter of quality, or right of taking, would all be on the same footing. Hence, the conclusion that the entire group constitutes the "nearest heirs" of the testator, and that the testator, by his use of a technical word carrying a specific meaning related to the statute of descents, intended to designate that group as collective participants in his estate. This construction of the words "nearest heirs" brings the entire will into harmony. The word "all" is no longer an occasion of perplexity, and the provisions for equal partitions become apt and appropriate, capable of easy application to the situation presented at the death of the testator, and of being carried out according to the usual acceptation and meaning of the words used.

In the opinion of the court, there is no error in the decree of the Circuit Court of Southampton county, and the same must be affirmed.

*Affirmed.*