# Richmond

## MINNIE GOUGH NEWTON v. JOHN ELIJAH NEWTON, ET AL.

March 10, 1958.

Record No. 4760.

Present, All the Justices.

The opinion states the case.

*John B. Boatwright* and *Robert Whitehead* (*Whitehead & Marshall*, on brief), for the appellant.

*W. M. Abbitt* and *G. M. Rogers* (*George Abbitt, Jr.*, on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The executors of the will of R. E. Newton brought this suit for the purpose of having the court construe his will and direct them in administering the estate. The court decided adversely to certain claims of the widow, Minnie Gough Newton, with respect to her share of the property under the will and under the statutes, and she appeals to this court.

The testator, R. E. Newton, of Buckingham county, died April 24, 1956, at the age of eighty-three, leaving a will which was duly probated and which is as follows in spelling and otherwise, exactly as it appears in the record:

"*Ths* day July 29, 1955
"in the year of our Lord
Being of a sound & *desping* mind I R. E. Newton do this day make this my last will and *testerment de*voking all other wills herebefore made by me.

first 1 I give my *pesant* wife Minnie Gough Newton one third of all my *Propity* for which she would be *intitle* to Real & Personal *Propity* according to law. the *balence* of my estate I am leaving in the hands of Three *Exetors* to carry my wishes & *desier*—and they are to have five per cent of all comes in *thir* hand & that is to be *devided* between all three.—I want my bu*i*sness carried on just I carry it on *farmg* house renting the farm & buildings must be *kep*. and take out cost and the five Per cent *executors* fee and Bal go to my estate & *ball* of my *Proced* be *Plased* in *difference* Banks or other *Relible* Places & at the *deth* of my wife the—all of my real estate will *Rvert* back then I want my home house and Ten acres of and go to for *aged* home for Buckingham Co. & *whte* only at age of 65 & over & all of my estate that is *lef* at that time be kept for to Keep up to take *cere* of the *ages* home I *Perfer* my wife—to have my home as apart of her *thirds*—if

she wants it as long as she lives. I do not want any law suits in *reguard* to this will. This will are in my own handwriting."

The will appointed his three nephews, John Elijah Newton, Carl W. Newton and Ralph R. Newton, as executors.

After the issues were made by the pleadings, some evidence was heard by the court as to the heirs of the testator and the amount of his estate. He left no issue and no adopted children. His father, mother, brothers and a sister had all predeceased him. He left surviving only the appellant, who was his second wife, and the children and grandchildren of his deceased brothers and sister as his next of kin. His personal property was appraised at $149,983.12, most of which was in government bonds, and his real estate was of an estimated value of around $90,000.

By decree the court extended the time within which the widow might renounce the will, as provided by §§ 64-14 and 64-33 of the Code. By separate decree the court held that the part of the will which attempted to provide for the aged of Buckingham county violated the rule against perpetuities and was void, invalid and unenforceable, and that the decedent died intestate as to the property included in that provision. There was no appeal from that decree, which has consequently become the law of the case and that matter is not before us on this appeal.

By the decree appealed from it was held that under the will the widow was entitled to receive one-third in absolute interest of the testator's net personal property after payment of debts, charges and administration costs, and one-third of the testator's real estate for her life; and that the rest and residue of the property of the testator should go to the heirs at law of the testator subject, however, to the right of the widow to renounce the will and take the share of the personal estate provided by § 64-16 of the Code and to waive jointure and demand dower in the real estate as provided by § 64-32 of the Code.

The decree further adjudicated that if the widow renounced the will, then she should receive one-half of the net personal estate as provided by § 64-16 of the Code; and should she waive jointure and demand dower, she would be entitled to a life estate in all of the testator's real estate. Appellant does not question the correctness of this holding in the event of her renunciation of the will and demand for dower.

The appellant concedes that by the terms of the will she is entitled

to only one-third of the real estate for life, as the court held. By her assignments of error she makes these claims: (1) By the terms of the will she is entitled to all of the testator's net personal estate; (2) but even if she is entitled to only one-third of the personal estate under the will, she is entitled to the other two-thirds under § 64-11 of the Code; and (3) in addition to the life estate in one-third of the real estate given her by the will, she is entitled to a life estate in the other two-thirds by virtue of § 64-27 of the Code. We shall consider her contentions in that order.

[■ First. The will gives to the wife "one third of all my *Propity* for which she would be *intitle* to Real & Personal *Propity* according to law." She says that in view of the two clauses appearing later in the will, "at the *deth* of my wife the—all of my real estate will *Rvert* back" and "I *Perfer* my wife—to have my home as apart of her *thirds*—if she wants it as long as she lives," she does not disagree with the finding that she was given only one-third of the real estate for life. But she argues with respect to the personal property that the phrase "according to law" controls and that under the law—the statute of distributions, § 64-11 of the Code—she gets the whole.

The fundamental rule in the construction of wills, as we have said many times, is that the intention of the testator must control so long as it does not run counter to some established rule of law; and the will is to be construed as a whole so as to ascertain the general plan and purpose of the testator, derived if possible from the meaning of the words used by him in the sense in which he used them. The object is to find the expressed intention of the testator, what he meant by what he wrote. 20 Mich. Jur., Wills, § 77; *Borum* v. *National Valley Bank*, 195 Va. 899, 906, 80 S. E. 2d 594, 598; *Pitman* v. *Rutledge*, 198 Va. 567, 571, 95 S. E. 2d 153, 156.

The will shows plainly that the testator was uneducated. It is not likely that he knew the law, but it is evident from the size of the estate he had accumulated that he knew figures, and we are safe in thinking that when he said he gave his wife one-third of his real and personal property he did not mean that he gave her all of it. The fraction "one-third" at the beginning and the phrase "according to law" at the end of the sentence making the gift were applicable equally to real and personal property. But admittedly their effect was to give the wife only one-third of the real estate for life, whereas "according to law" she would have taken the whole of the real estate for life. Code § 64-27. After the provision for his wife he left the

balance of his estate to his executors to carry out his wishes and desires, which were to provide for the aged of Buckingham county. At his wife's death, he said, all of his real estate would revert back, and all of his estate left at that time was to go for that purpose, adding that he preferred his wife to have his home as a part of her "thirds," repeating what he started out with, that her share was to be one-third. He doubtless thought that provision was "according to law," not an uncommon idea among lay citizens, as in fact it was according to the law of an earlier day; but in any event that phrase evidently of mistaken meaning to him should not override his pervading and prevailing description of the portion he wanted her to have, which he said in unmistakable terms was one-third. We agree with the trial court that the will gave the wife one-third of the net personal estate in fee and one-third of the real estate for life.

Second. Even so, asserts the appellant, she is entitled independently of the will, to the other two-thirds of the net personal estate by reason of § 64-11 of the Code. The appellees, on the other hand, contend that § 64-16 limits her share of the personal estate to what is given by the will unless she renounces the will. Both of these sections are set out in the margin.[1] The question is not now an open one in Virginia.

It will be observed that § 64-11 provides that when any person dies

---

[1] "§ 64-11. Distribution of personal estate.—When any person shall die intestate as to his personal estate or any part thereof, the surplus (subject to the provisions of Title 34) after payment of funeral expenses, charges of administration and debts, shall pass and be distributed to and among the same persons, and in the same proportions, to whom and in which real estate is directed to descend, except as follows:

(1) *Infants.*—The personal estate of an infant shall be distributed as if he were an adult.

(2) *Married persons.*—If the intestate was married, the surviving husband or wife shall be entitled to one-third of such surplus, if the intestate left surviving children or their descendants (a) of the marriage which was dissolved by the death of the intestate, (b) of a former marriage, (c) by legal adoption, or (d) though such children were illegitimate, if the intestate was a wife; but if no such children or their descendants survive, the surviving husband or wife shall be entitled to the whole of such surplus."

"§ 64-16. Rights upon renunciation or when no provision made by will.—If renunciation be made, or if no provision for the surviving husband or wife be made in the will of the decedent, the surviving consort shall, if the decedent left surviving any direct descendants or a legally adopted child, or descendants of any deceased adopted child, have one-third of the surplus of the decedent's personal estate mentioned in § 64-11; or if no direct descendants or adopted child of the testator, or descendants of a deceased adopted child, survive, the surviving consort shall have one-half of such surplus; otherwise the surviving consort shall have no more of the surplus than is given him or her by the will."

intestate as to his personal estate, or any part thereof, the surplus as defined shall go, where there are no descendants, to the surviving wife (or husband). Appellant says that upon the failure of the gift of the residue of the estate for the benefit of the aged of Buckingham, the testator died intestate as to that property, resulting in a partial intestacy as to the surplus of the personal property remaining after the one-third given to her by the will, and thereupon the statute applies and gives her the remaining two-thirds of this surplus. It will be further observed, however, that § 64-16 provides that (1) if renunciation of the will is made, or (2) if no provision for the surviving consort is made in the will, then, in the situation here existing, the surviving consort shall have one-half of such surplus; but, says this statute, "otherwise the surviving consort shall have no more of the surplus than is given him or her by the will."

The predecessor of present § 64-11 was § 29 of chapter 104 of the Revised Code of 1819, which provided that "When any person shall die intestate as to his goods and chattels, *or any part thereof*, after funeral debts and just expenses paid, if there be no child, one moiety [one-half], or, if there be a child or children, one third of the surplus shall go to the wife; * *." (Emphasis added) The statute continued then to provide that she should have only the use for life of the slaves in her share, and the residue of the surplus should go as lands descend under the then statute of descents.

The predecessor of present § 64-16 was § 26 of the same chapter 104 of the Code of 1819, which provided that the widow might renounce the will and thereupon she would be entitled to one-third of the slaves for life and to such share in absolute estate of his other personal property as if he had died intestate; but every widow not so renouncing the will "shall have no more of her husband's slaves and personal estate, than is given her by his will." [2]

---

[2] These two sections were carried into the Code of 1849 as § 10 and § 12 of chapter 123, respectively; and into the Code of 1887 as § 2557 and § 2559, respectively, of chapter 113; and into the Code of 1919 as § 5273 and § 5276, respectively, of chapter 213. While these statutes have amended the original sections of 1819 from time to time to enlarge the share of the widow, and finally to put husband and wife on equal terms, they have without exception retained the language of the sections of the 1918 Code to provide as § 64-11 now does for cases in which a person shall die intestate as to his personal estate "or any part thereof"; and as § 64-16 now does that "otherwise [when there is no renunciation or no provision for the consort in the will] the surviving consort shall have no more of the surplus than is given him or her by the will."

While these two sections of the 1819 Code were in effect the case of *Dupree's Adm'r, et al.* v. *Cary, et al.*, 33 Va. (6 Leigh) 36, was decided in 1835. In that case a testator devised real and personal estate to his wife, with remainder to his nephews and nieces, but left part of his personal estate undisposed of. The widow did not renounce the will, and the question in the case was whether the widow was entitled to share in the personal property of which her husband died intestate. The court, in an opinion by Judge Carr, said:

"This is a bill by the next of kin of a testator, claiming a part of his personal estate, as to which he made no testamentary disposition, and died intestate. The claim is opposed by the legatees of the testator's widow, who claim a share of this subject in her right. A provision was made for her by the will of her husband, which she never renounced. She had no right to any more of her husband's estate than that which was bequeathed to her by his will. The statute 1 Rev. Code, ch. 104, § 26, p. 381, is express; and so are all the cases on the point in this court; the last of which is *Thornton* v. *Winston*, 4 Leigh 152, where the other cases are cited."

In *Thornton* v. *Winston*, decided in 1833, referred to in the *Dupree* case, the husband had made a will devising property to his wife but failed to dispose of an item of personal property. The wife did not renounce and the question was whether the wife had a right to qualify as executrix with respect to this intestate property. It was held that she did not because the law then was that the person entitled to the estate was the person entitled to administration. There were two opinions, one by Judge Carr, who stated that it was clear that the widow "has no interest in the *residuum*; nothing to do with the personalty beyond the provision made for her by the will." 31 Va. (4 Leigh) at 158. Judge Tucker wrote:

"* * * Now, in this case, I take it the widow is entitled to no portion of the *residuum*. She has had an ample provision made for her by her husband's will; and if not, yet she has not renounced the will: and the law emphatically declares, as to the *personalty*, that if she does not declare her refusal of the provision made for her by the will, within a limited time, she shall have no more of her husband's slaves and personal estate than is given her by his will. * * *." 31 Va. (4 Leigh) at 162.

Again in *Findley's Ex'ors* v. *Findley*, 52 Va. (11 Gratt.) 434, 439 (1854), it was said by a unanimous court:

"The question next in order is, What effect the will of Samuel

Findley had upon the rights of the appellee his widow to distribution of the personal estate? This question has occurred in many cases under the law as it stood at the death of the testator; and in every case it has been decided that unless the widow renounce the provision made for her by the will, she could claim nothing more than was given by it. * * *."

*Nelson's Adm'r* v. *Kownslar's Ex'or,* 79 Va. 468, 479, (1884), cites *Findley's Ex'ors* v. *Findley, supra,* and quotes from *Blunt* v. *Gee,* 9 Va. (5 Call) 481:

"* * * 'If the widow does not renounce her husband's will within one year after his death, she loses her distributive share of the personal estate, and is confined to the provision of the will, but is entitled to her dower in the lands.' * * *."

Of like import are the cases of *Wiseley* v. *Findlay,* 24 Va. (3 Rand.) 361, 372 (1825); *Mitchells* v. *Johnsons,* 33 Va. (6 Leigh) 461 (1835); *Cocke's Ex'or* v. *Philips,* 39 Va. (12 Leigh) 248 (1841). See also *Davis* v. *Davis,* 138 Va. 682, 688, 123 S. E. 538, 540; *Muse* v. *Muse,* 186 Va. 914, 919, 45 S. E. 2d 158, 161, 2 A.L.R. 2d 603; *Re Hills,* 264 N. Y. 349, 191 N. E. 12, 93 A.L.R. 1380, and Anno. 1384; *Compton* v. *Akers,* 96 Kan. 229, 150 P. 219, L.R.A. 1917D 758, and Anno. 762.

Recently in *First Nat. Bank* v. *Hughson,* 194 Va. 736, 74 S. E. 2d 797, while the main question was as to the power and limitations on the right to renounce on behalf of an incompetent widow, the history of the right of renunciation was reviewed and the *Mitchells, Findley* and *Nelson* cases above referred to were cited in support of the statement that "within the year [allowed by statute] the widow or widower must elect to take by the will or against it, and election to take under the statute forfeits all rights enjoyed and provisions made for him or her in the will"; and, quoting from *Findley,* " 'The appellee cannot assert her paramount claim to distribution against the will, and also claim the provision, or any part of it, made for her by the will. Having made her election to take the first, she must give up the last to indemnify the parties who are disappointed by her election.' " 194 Va. at 746-7; 74 S. E. 2d at 804.

The appellant argues earnestly that §§ 64-11 and 64-16 are in the same chapter of the Code of 1950, are *in pari materia* and should be construed together; that the provisions for the widow in the two sections should be reconciled and harmonized. She says this ought

to be done by construing the concluding part of § 64-16 as if it contained the following italicized words and read as follows:

"Otherwise the surviving consort shall have no more of the surplus *validly disposed of by the will* than is given him or her by the will."

If that be a desirable addition to the statute it should be supplied by the legislature. The function of courts should be to interpret laws as they are written, not as courts might think they should be written. These two statutes, or their predecessors, have been together in the same chapters of the Codes of Virginia for nearly 140 years, and during that time they have contained these same respective provisions, changed only as to the widow's portion and finally to put husband and wife on equal terms. For more than 120 years the construction first put upon those statutes has remained unchanged by the court or the legislature. That interpretation has been that when personal property is given to the wife by a will which she does not renounce, she takes only what the will gives her, according to the specific provision of § 64-16, and necessarily that the general provision of § 64-11, dealing with cases where there is no will or one that does not dispose of all personal property, does not apply. That the legislature in enacting § 64-16 was fully aware of the provisions of § 64-11 is clearly shown by the fact that § 64-16 specifically refers to and deals with the personal estate mentioned in § 64-11.

In the case of *Harmer* v. *Boggess, et al.*, 137 W. Va. 590, 73 S. E. 2d 264, a wife had died leaving a will in which she gave to her husband a life estate in real and personal property, and devised the remainder in a way held to be invalid. The wife had no descendants and the husband did not renounce the will. Under statutes practically identical with those here involved, so far as personal property is concerned, the court held that at the death of the wife the husband took this remainder as her sole heir at law and distributee. The appellant urges us to follow that decision. In its opinion the court stated that the question was one of first impression in that State. As pointed out above, it is not of first impression in this Commonwealth, and we feel constrained to follow our own decisions, particularly since the statutes as so construed have remained unchanged by the legislature over so long a period of time as that the construction has become in effect a rule of property. *Cf. Fuller* v. *Virginia Trust Co.*, 183 Va. 704, 33 S. E. 2d 201; *Snidow* v. *Snidow*, 192 Va. 60, 63 S. E. 2d 620.

Third. The appellant contends that in addition to a life estate in one-third of the real estate given her by the will, she is also entitled

to the other two-thirds for life by way of dower under § 64-27 of the Code.[3] She argues that since her husband died without issue and partially intestate, due to the invalidity of the gift to the aged of Buckingham, the "in addition thereto" clause of the statute applies and gives her dower in the remaining two-thirds of the real estate in addition to the one-third given to her by the will.

Section 64-27 deals with dower and says what the dower of the widow shall be if the husband dies wholly or partially intestate. It does not apply where the widow accepts jointure provided for her by a will or a deed. There are two other statutes which deal specifically with the dower rights of the widow when her husband leaves a will which makes provision for her. One is § 64-31, which provides that if any estate, real or personal, intended to be in lieu of dower, be conveyed or devised for the jointure of the wife (*i.e.*, as a substitute for her dower), such conveyance or devise "shall bar her dower of the real estate, or the residue thereof," and every such provision "shall be taken to be intended in lieu of dower unless the contrary intention plainly appear in such deed or will or in some other writing signed by the party making the provision."

The other statute is § 64-32, which provides that the widow may waive such jointure and demand her dower, such election to be made in the time and in the manner provided by the statute; "and when she shall elect and receive her dower, the estate so conveyed or devised to her shall cease and determine."

It is thus clearly provided that the widow cannot have both jointure and dower. She must choose one or the other. She may waive what the husband has given her by the will or by deed in lieu of her dower and claim dower in his real estate; but if she does, she must relinquish what the will or the deed has given her as jointure,

---

[3] "§ 64-27. Of what a widow shall be endowed.—A widow shall be endowed of one-third of all the real estate whereof her husband, or any other to his use, was, at any time during the coverture, seized of an estate of inheritance, unless her right to such dower shall have been lawfully barred or relinquished; but if he die wholly intestate and without issue of the marriage which was dissolved by his death or of a former marriage, his widow shall be endowed of one-third of such real estate, as aforesaid, and, in addition thereto, subject to the rights of her husband's creditors, of all the residue of such real estate of her husband; or if he die partially intestate and without any such issue, his widow shall be endowed of one-third of such real estate, as aforesaid, and, in addition thereto, subject to the rights of her husband's creditors and after the rights of the devisee or devisees under her husband's will shall have been fully satisfied, of all the residue, if any, of such real estate."

because that is what the statute in express terms requires. She cannot have both. That has been the rule for a long time.

In *Dixon* v. *McCue*, 55 Va. (14 Gratt.) 540, 549 (decided in 1858, before the 1866 amendment which placed in the jointure statute the provision, in the same words as now in § 64-31, that "every such provision, by deed or will, shall be taken to be intended in lieu of dower," etc.), it was said that, applying the established principle to the case of dower, "the doctrine is, that if the testator has made such a disposition of his real estate, as that the assertion by the widow of her right to dower would prevent that disposition taking effect as the testator intended, then she must elect to abandon either her dower, or the benefit given her by the will." See also *Rutherford* v. *Mayo*, 76 Va. 117, 123; Minor on Real Property (2d ed., vol. 1, Ribble), § 305, p. 391.

In *Waggoner* v. *Waggoner*, 111 Va. 325, 328, 68' S. E. 990, 991, it was stated even more emphatically: "For it is well settled that he who accepts a benefit under a will must accept the contents of the whole instrument, conforming to all its provisions and relinquishing every right inconsistent therewith." "The jointure statutes contemplate an election between jointure and dower." *Snidow* v. *Snidow, supra*, 192 Va. at 67, 63 S. E. 2d at 625.

In *Davis* v. *Davis, supra*, the husband bequeathed to his wife $3,000, "which shall be in full of all her claims against my estate, as my wife." 138 Va. at 684, 123 S. E. at 539. The quoted words were as to dower equivalent to the unrebutted presumption created by § 64-31. It was there said: "When the testator * * * bequeathed to appellee the sum of $3,000.00, absolutely, in full of all her claims against the estate, he must have known that in order to take under the will she must give up all dower rights in his real estate and also surrender all claims to his personal estate." It was also pointed out that a widow who accepts the provision made for her by a will is as a purchaser for value, and by her relinquishing her dower right the estate acquires a valuable property, and it is the right of the testator to affix what consideration he pleases for the relinquishment of dower and of the widow to accept it or reject it as she pleases.

*Dixon* v. *McCue* and *Snidow* v. *Snidow, supra*, were cases in which the testator gave all of his property to his wife, and as there explained, there was nothing for the widow to elect and the election statute therefore had no application. *Seaton* v. *Seaton*, 184 Va. 180, 34 S. E. 2d 236, held that under the law of Florida the widow was not

required to elect between her right to the homestead which was hers by operation of law and her benefits under the will.

Under § 64-31 the provision for the appellant made in the will was intended to be in lieu of dower. Not only does a contrary intention not plainly appear from the will, but from the will itself it affirmatively and clearly appears that he intended that provision to be in lieu of dower, because he undertook to dispose of his whole estate remaining after his provision for his wife. In such case § 64-31 provides that the devise to the widow "shall bar her dower of the real estate, or the residue thereof," not just her dower of the real estate "validly disposed of by the will," as the appellant would have us construe that statute. There is no such qualification in it. The bar is exclusive and comprehensive. It applies to all the real estate or, as in this case, to all the residue thereof left after the part given to the widow by the will. Then, says § 64-32, if the widow is not satisfied with what her husband's will gives her, she may waive its provisions and demand her dower; but if she does so, then the estate so devised to her "shall cease and determine." If, and only if, she waives the provision made for her by the will and demands her dower, then § 64-27 provides what her dower shall be. In this case it will be, as the court below held, a life estate in all the real estate owned by her husband when he died. But she takes that estate under the statute and not under the will. The will gave her one-third of the personal property in fee and one-third of the real estate for life. To get more she must renounce the will and demand dower as provided by the statutes. She cannot take both under the will and under the statutes.

The court below decided the issues correctly and the decree appealed from is accordingly

*Affirmed.*