Laura Tucker FLETCHER, Appellant,

v.

The WASHINGTON AND LEE UNIVERSITY, Appellee.

No. 82–1891.

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1983.

Decided April 28, 1983.

E. Griffith Dodson, Jr., and Clifton A. Woodrum III, Roanoke, Va. (Dodson, Pence, Viar, Young & Woodrum, Roanoke, Va., on brief), for appellant.

S.D. Roberts Moore, Roanoke, Va. (Melissa J. Warner and Gentry, Locke, Rakas & Moore, Roanoke, Va., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge and ALDRICH, Senior Circuit Judge.*

BAILEY ALDRICH, Senior Circuit Judge:

■ In September, 1957, Rosa Tucker Mason, by written agreement with defendant Washington and Lee University, deeded to defendant a certain property, consisting of some eight acres of land and a mansion, known as Col Alto; she to enjoy the property during her lifetime, and the University to have the fee, but on certain specified conditions, thereafter. It was further provided as follows.

9. The University agrees that if in the future it should determine, for any reason, that it no longer desires or is able to retain the premises under the conditions set forth herein, it will convey the premises to those persons then living who shall be determined to be the next of kin of the owner.

Mrs. Mason died in January, 1961, leaving several brothers and sisters surviving. The last of these, excepting plaintiff, Laura Tucker Fletcher, died in December, 1978, leaving presently surviving issue. In April, 1981, plaintiff made demand upon the University for conveyance to her, as the alleged sole "living . . . next of kin" of Mrs. Mason, for breach of condition. Following defendant's refusal, she instituted the present action for a declaratory judgment. Defendant moved to dismiss for failure to state a cause of action, which motion the court denied. It then moved, pursuant to F.R. Civ.P. 19, to dismiss for failure to include allegedly indispensable parties plaintiff, viz., Mrs. Mason's surviving nephews and nieces by deceased siblings. Finding them to be included in the phrase "next of kin," the court granted this motion, with opinion, 550 F.Supp. 21.

As authority the court looked to the Virginia statute of descents, and to the language of two Virginia cases, *Newton v. Newton*, 199 Va. 785, 102 S.E.2d 312 (1958), and *Eason v. Eason*, 203 Va. 246, 123 S.E.2d

* Of the First Circuit, Sitting by Designation.

361 (1962). For reasons we will come to, we find these cases not to be relevant, but we will deal first with the statute of descents, which if it were applicable, would fully justify the court's result. However, we believe it inapplicable.

In 1957, when the agreement was executed (and since) the statute read as follows.

§ 64–1. When any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass in parcenary to such of his kindred, male and female, as are not alien enemies, in the following course:

First. To his children and their descendants.

Second. If there be no child, nor the descendant of any child, then the whole shall go to the surviving consort of the intestate. (Now "spouse")

Third. If there be none such, then to his or her father and mother or the survivor.

Fourth. If there be none such, then to his or her brothers and sisters, and their descendants.

.    .    .    .    .

Code of Virginia of 1950, Section 64–1, as amended, 1956, Ch. 109.

Admittedly this statute "abrogated ... the whole of the common law regulating descents." *See Copenhaver v. Pendleton,* 155 Va. 463, 155 S.E. 802, 812, (1930). However, this was with regard to statutory descent, intestacy. The statute did not purport to change the meaning of recognized common law words, even when they were used in a will. This is demonstrated by the case of *Kello v. Kello's Executors,* 127 Va. 368, 103 S.E. 633, at 636 (1920). The question there was who were to take as "my then living nearest heirs." In holding that the children of deceased brothers and sisters were to share with the sole surviving brother, the court said,

"The appellant, in the instant case, insists that the words 'nearest heirs' mean the nearest in blood to the testator living at the time of his death, and that, as he alone falls within that description, he is entitled to the entire residuum. *If the words 'nearest heirs' were synonymous with the words 'nearest of kin,' the contention would be irresistible.* As it is, it is a persuasive one. But there is other language in the will indicating that the testator, when he used the words 'nearest heirs,' did not contemplate that his estate should pass to a single brother under that designation, but rather that he had in mind a group of takers...." (Emphasis suppl.)

After developing this last sentence the court said,

"Again, *it may be asked why the testator did not use the words 'my then living next of kin,'* or 'my nearest surviving relations,' instead of the words actually used, *if he intended that his estate should pass to the nearest of his blood* living at his death? 'Heirs' is a highly technical word, while 'kin' is not. The word 'heirs' has been defined in Virginia as the 'next of kin' who take under the statute of descents. The nearest in blood according to nature do not always share in the inheritance under the statute of descents....[**] In the instant case, the testator left his estate to all of *his 'then living nearest heirs,'* that is, it may be fairly said, to *his next of kin who would take according to the statute,* or to that group of kin who for the purposes of inheritance are his nearest heirs in the contemplation of the statute." (Emphasis suppl.)

We read this to mean that a court may loosely describe as "next of kin" the parties who, in the particular instance, are the ones who take under the statute (*see, also, Bonewell v. Smith,* 120 Va. 431, 91 S.E. 759, 761 (1917) ("The word 'kindred' ... used in such a statute has the meaning of 'next of

---

** The omitted language indicates that the statute of descents in effect in 1920 (Va.Code of 1919, Ch. 213, §§ 5264 and 5266, and see *Moore v. Conner,* Va., 1890, 20 S.E. 936) allegedly traceable to Thomas Jefferson, had certain chauvinistic aspects, now eliminated, but comparison of the two statutes reveals that the basic principle enunciated by the court would still apply.

kin' ")) but that when the actual phrase is employed in an instrument it is to be construed strictly, in its commonly accepted meaning, as nearest in blood.

This distinction is confirmed by *Boyd v. Fanelli,* 199 Va. 357, 99 S.E.2d 619 (1957). The issue there was the time the class—"my next of kin, per capita"—was to be determined. For the composition of this class the court expressed no doubts. Rather than look to the statute of descents, or discuss any possible conflict, it stated flatly,

"[T]he phrase, 'my next of kin,' as used by the testatrix means her closest blood kin and does not mean those who would be her heirs or distributees under the statute of descent and distribution.

. . . . .

"She resorted to a class designation, all members of which would be the same degree of kinship to her." 99 S.E.2d at 623.

Then, applying that definition of next of kin to the possible dates for determination, it stated as of one of them, a time when the testatrix would have had three deceased sisters, one with living issue, and one surviving brother, that the brother "would have been her closest blood kin and sole beneficiary of the remainder." Ibid. Except to mix brothers and sisters, this is precisely the case at bar.

Defendant seeks to distinguish *Boyd* on the ground that it involved a spendthrift trust. However, this is to put the cart before the horse. The court used the fact that there was a spendthrift trust as a reason for construing the testator's intent to avoid the date that would result in the brother being the sole beneficiary.

The cases of *Newton v. Newton* and *Eason v. Eason,* ante, are not to the contrary. Neither involved the question of what was meant by the words "next of kin" appearing in a will. In *Newton* the sole question was the interest of the widow. The testator left no issue, and left no surviving siblings. The court simply spoke, in accordance with its practice, of the issue of deceased siblings as the "next of kin." In *Eason* the question was the testatrix's testamentary capacity. In describing those

who would take, if the will were invalidated, as "next of kin," again the court was simply following the practice expressly recognized in *Kello.* We do not read either of these cases as sub silentio overruling the extensive language in *Kello,* or the holding in *Boyd,* as to the continued force of the common law meaning of the words "next of kin" when the instrument contains these actual words. *E.g. Swasey v. Jaques,* 144 Mass. 135, 10 N.E. 758 (1887) (a case which draws the same distinction between "next of kin" and "heirs" as was drawn in *Kello v. Kello's Executors*); *Central Carolina Bank & Trust Co. v. Bass,* 265 N.C. 218, 143 S.E.2d 689, 698 (1965) and cases cited.

Finally, we note the Virginia court's general observation that "the statute of descent and distribution is not a canon of presumptive intent." *Newsome v. Scott,* 200 Va. 833, 108 S.E.2d 369, 372 (1959).

It follows that Mrs. Fletcher is the sole party in interest as "next of kin," and defendant's Rule 19 motion to dismiss was improperly granted.

■ Turning to defendant's motion to dismiss for failure to state a cause of action, the denial of that motion would not ordinarily be a reviewable matter, because not leading to a final judgment. 28 U.S.C. § 1291. However, there was a final judgment of dismissal as a result of the Rule 19 motion, and, invoking broadly the principle that a district court's action may be sustained if correct, even if the wrong reason were given, we will consider the court's ruling on that earlier motion. Both parties have briefed this matter, although plaintiff with the assertion that the point is not presently open.

■ Paragraph 1 of the Agreement reads as follows.

The owner agrees to convey to the University in fee simple by deed of even date herewith so much of the premises in Lexington, Virginia, known as "Col Alto," as is described in the said deed and plat of survey attached thereto, upon the condition that the said premises shall be used as a residence for the President of the University upon her death, or, if such use shall become impractical in the future,

that the said premises shall be used for some other non-commercial purpose of the University, provided that in either event the entire tract of land and the existing main residence shall be kept intact except as provided in paragraph 2 of this agreement.

Defendant makes a double-pronged argument. The first is that, whoever may be the next of kin, they have been given no "estate upon condition subsequent." Whatever that phrase may mean in other connections, defendant's undertaking in paragraph 9, ante, to convey upon breach of condition is an adequate answer. A fair meaning is to be given to an agreement.

Secondly, defendant says that for it to "determine . . . that it no longer desires or is able" (to retain the premises under the conditions set forth) in paragraph 9 sets an entirely subjective test and, in effect, gives it carte blanche even though 21 years have passed without its undertaking the proposed use. Such a broad construction would make the entire agreement meaningless. In addition, the complaint makes certain positive assertions of other breaches, clearly raising factual issues. The motion to dismiss was properly denied.

Reversed.